Charles S. Payson v. Commissioner.
Charles S. Payson v. Commissioner
Docket No. 9530.
United States Tax Court
1947 Tax Ct. Memo LEXIS 194; 6 T.C.M. (CCH) 590; T.C.M. (RIA) 47147; May 29, 1947
*194 1. Petitioner in the taxable year surrendered his stock in a corporation then liquidating and dissolving, receiving in exchange stock of another corporation to which the liquidating corporation had transferred that day all of its assets in exchange for preferred and common stock of the acquiring corporation. The liquidation and dissolution of the selling corporation are found to constitute a part of the plan of reorganization within the purview of Section 112, I.R.C., and petitioner is held to have sustained no deductible loss upon the exchange. 2. Respondent held not to be precluded from asserting the present deficiency by reason of the fact that petitioner had paid an additional tax for the same year found due upon an audit by a revenue agent and such payment had been made pursuant to a waiver of restrictions upon assessment and collection. 3. Petitioner is found to have made payment in the taxable year of $6,349 to a law firm for services in connection with his income tax controversies. Held, that he is entitled to deduction of this sum. J. Sterling Halstead, Esq., 70 Pine St., New York 5, N. Y., for the petitioner. Harold D. Thomas, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined a deficiency of $30,224 in petitioner's income tax for the calendar year 1941. An overpayment of $5,016.02 is claimed by petitioner. The issues submitted are: (a) whether petitioner realized a deductible loss upon the liquidation of a corporation wherein he surrendered his shares of its corporate stock and received stock of another corporation to which the liquidating corporation had transferred all of its assets in exchange for preferred and common stock of the acquiring corporation; (b) whether the respondent is precluded from asserting *196 a deficiency here by reason of the fact that petitioner had paid an additional tax for the same year found to be due by a revenue agent, such payment having been made pursuant to a waiver of restrictions on assessment and collection; and (c) is petitioner entitled to a deduction of more than $6,200 for attorneys' fees paid in connection with certain income tax litigation. Findings of Fact Petitioner is an individual, with office at 30 Rockefeller Plaza, New York City. His return for the taxable year involved was filed with the collector of internal revenue for the second district of New York. Petitioner, in his amended return for 1941, claimed as a deduction attorney's fees in the sum of $6,349 for services rendered in income tax litigation, and $100,746.67, representing 66-2/3rds per cent of an alleged loss of $151,120 incurred upon liquidation of a corporation known as Refined Syrups Sales Corporation. This return was audited by a revenue agent who determined that the aforementioned payment of $6,349, and certain other items not in issue in this proceeding, were not allowable deductions. The recomputation of the tax by the revenue agent, with the elimination of these items, *197 showed an additional tax due in the sum of $6,900.70. On July 15, 1944 petitioner executed a waiver of restrictions on assessment and collection of this deficiency and on September 9, 1944, paid such deficiency together with interest thereon of $1,000.60. Subsequent to this audit of petitioner's return by the revenue agent and the payment of the resulting additional tax, respondent determined that petitioner had suffered no deductible loss on the transaction in which he had received a liquidating distribution upon which he had claimed the loss of $100,746.67. Respondent thereupon determined the present deficiency. Refined Syrups & Sugars, Inc. was incorporated in 1927. Petitioner and his wife were large stockholders and petitioner has been connected with the company since its incorporation. Edward W. Freeman and his wife were large stockholders and the former was an officer and director of the corporation. In 1939 the condition of the business of Refined Syrups & Sugars, Inc. was financially critical. The company had acquired a plant in Yonkers, New York, and the cost of remodeling it for its use had proved to be greatly in excess of the estimated cost. In addition, the corporation *198 was indebted to the United States government for approximately $250,000, representing unpaid excise taxes on processing of sugar. Conferences were held by the corporate officers with the collector of internal revenue, who desired to co-operate in permitting the plant to continue operations but insisted that some arrangement be made to protect the government's claim. To meet the situation efforts were made to secure additional financing but these were unsuccessful. Finally, in 1940, an arrangement was made under which the petitioner, Edward W. Freeman, his wife, Dorothy P. Freeman, and certain members of the Luke family, all of whom were large stockholders in the corporation, caused a new corporation to be organized known as Refined Syrups Sales Corporation. Petitioner paid in $200,000 for preferred stock of the new corporation of a par value of $100 per share and $2,000 for 2,000 shares of common stock of a par value of $1.00. Freeman paid in $2,000 for 2,000 shares of common stock and his wife, Dorothy P. Freeman, paid in $200,000 for 2,000 shares of preferred stock. The Luke family paid in approximately $16,000 for preferred and common stock, making a total of approximately $420,000 *199 capital paid in to the new corporation. Upon organization of Refined Syrups Sales Corporation the latter leased the plant of Refined Syrups & Sugars, Inc. and continued operating the business with the new capital. Refined Syrups & Sugars, Inc. thereupon filed a petition in bankruptcy and continued under control of the court for approximately one year. The only purpose for the formation of Refined Syrups Sales Corporation was that it should take over the business operations of Refined Syrups & Sugars, Inc. to avoid the closing of the plant by the action of the collector of internal revenue and other creditors. For several months following the organization of Refined Syrups Sales Corporation and its taking over operation of the plant the business was not profitable but conditions then changed and before the close of the year 1941 it was showing a substantial profit. It was thereupon decided by the officers of Refined Syrups & Sugars, Inc. to recapitalize that corporation and have it take back the operation of the plant. A plan of reorganization was prepared and submitted to its stockholders and adopted. This plan provided for the issuance of additional preferred and common stock. *200 This stock was to be issued to Refined Syrups Sales Corporation in exchange for all of the latter's assets. Prior to the recapitalization, the authorized capital of Refined Syrups & Sugars, Inc. consisted of 15,000 shares of preferred stock without par value of which 8,999 shares were outstanding, and 125,000 common stock of a par of $1.00 of which 103,696 shares were outstanding. The plan provided for an authorized capital of 15,000 shares of preferred stock of no par value and 250,000 shares common of a par of $1.00. The old preferred stock, carrying an $8.00 cumulative dividend, was to be reclassified so that there would be a series of 12,000 shares bearing cumulative dividends at the rate of $2.00 per annum, entitled upon redemption or liquidation to $33 per share and having voting rights. Upon recapitalization, there would be 11,999 shares of preferred and 214,530 shares of common outstanding. The plan recited "The increase of 3,000 shares in the issued and outstanding shares of Preferred Stock is accounted for by the issue of 3,000 shares to Refined Syrups Sales Corporation as part consideration for the acquisition of its assets and the increase of 110,834 shares in the issued *201 and outstanding shares of Common Stock is accounted for by (i) the issue of 60,000 shares thereof to Refined Syrups Sales Corporation as part consideration for the acquisition of its property and assets; and (ii) the issue of 50,834 shares to the holders of the $8 Cumulative Preferred stock in lieu of cumulative accrued and unpaid dividends from November 15th, 1938 to the date of such issue." Prior to the reorganization there were 8,999 shares of preferred stock of Refined Syrups & Sugars, Inc. outstanding which were owned as follows: Charles S. Payson (petitioner)
8,291 shares
Mrs. Dorothy P. Freeman
311 shares
Refined Syrups Sales Corporation
397 shares
Total
8,999 shares There were 103,696 shares of common stock of Refined Syrups & Sugars, Inc. outstanding which were owned as follows: Charles S. Payson (petitioner)
40,531 shares
Mrs. Joan Payson (wife)
15,000 shares
Edward W. Freeman
6,998 shares
Mrs. Dorothy P. Freeman
5,112 shares
Various members of the Luke
family (approximate aggregate)
23,200 shares
Others
12,855 shares
Total
103,696 shares
At a meeting of the board of directors of Refined Syrups Sales Corporation, held *202 on December 16, 1941, the directors, including petitioner and Edward W. Freeman, resolved that upon the necessary consent of the stockholders, the proposal of Refined Syrups & Sugars, Inc. to take over all the assets and liabilities for the issuance of 3,000 shares preferred stock and 60,000 shares common stock of the latter company would be accepted. At such meeting it was also unanimously resolved "that the Board of Directors deems it for the best interests of the Corporation and its stockholders that, upon the acceptance of the proposal from this Corporation to Refined Syrups & Sugars, Inc., by Refined Syrups & Sugars, Inc., and upon the transfer of the assets and property of this Corporation to Refined Syrups & Sugars, Inc., in exchange for securities of Refined Syrups & Sugars, Inc. pursuant to such proposal, this Corporation be dissolved." The following resolution was also adopted: "RESOLVED that the Corporation Trust Company and its officers and agents be and they hereby are appointed agent of this Corporation for the purpose of filing the Certificate of Dissolution of this Corporation with the Secretary of State of the State of New York and to accept, on behalf of this *203 Corporation, a duplicate Certificate to be made by the Secretary of State to the effect that such Certificate of Dissolution has been filed; that it appears therefrom that this Corporation has complied with Section 105 of the Stock Corporation Law of the State of New York and that it is dissolved." The minutes of the meeting of the directors of Refined Syrups Sales Corporation held on December 30, 1941, recite that petitioner and Dorothy P. Freeman were each the owner of 2,000 shares of preferred stock of that company and that petitioner and Edward W. Freeman were each the owner of 2,000 common shares. The minutes further recite that the value of the 3,000 shares preferred and 60,000 shares common stock of Refined Syrups & Sugars, Inc. to be distributed upon dissolution of the Refined Syrups Sales Corporation was less than the liquidating value ( $110 per share) of the preferred stock of Refined Syrups Sales Corporation with accumulated dividends thereon. It was resolved that upon the filing of the Certificate of Dissolution with the Secretary of State of the State of New York all the assets of the corporation consisting of 3,000 shares preferred and 60,000 shares common stock of *204 Refined Syrups & Sugars, Inc. be distributed one-half each to petitioner and Mrs. Dorothy P. Freeman. Refined Syrups Sales Corporation was dissolved on December 31, 1941. Two common stock certificates, each for 30,000 shares, and two preferred stock certificates, each for 1,500 shares, of Refined Syrups & Sugars, Inc. were issued on December 31, 1941 in the name of Refined Syrups Sales Corporation. One of each such certificates was endorsed on the same date by Refined Syrups Sales Corporation in favor of petitioner and Mrs. Freeman. The value of the 1,500 shares of preferred stock of Refined Syrups & Sugars, Inc. received by the petitioner was then $30 a share and the value of the 30,000 shares of common stock was $.196 a share. The plan of reorganization included the liquidation and dissolution of Refined Syrups Sales Corporation. Petitioner, on April 15, 1941, paid to Holt & Halstead, attorneys, the sum of $6,349 for legal services in connection with certain income tax matters. Opinion Petitioner first argues that respondent is precluded from asserting the present deficiency by reason of the fact that he has accepted from petitioner a waiver of restrictions upon assessment *205 and collection of the additional taxes revealed by the revenue agent's first examination and that petitioner has paid the amount asserted as a result of that investigation. It is urged that petitioner having waived his right to contest the determination made by the revenue agent, and respondent having benefited by that waiver, good faith requires that all matters in controversy with respect to petitioner's tax liability for that year should be considered as having been finally settled and closed and that respondent be estopped to assert any additional deficiency. Respondent points out that petitioner seeks to invoke the doctrine of equitable estoppel and that this Court is without general equity jurisdiction. C. D. Little, 20 B.T.A. 1042; Northport Shores, Inc., 31 B.T.A. 1013. However, aside from this question, we think petitioner's contention is wholly without merit. Form 870, Waiver of Restrictions, does not preclude the taxpayer from later claiming a refund. In fact, a refund is here being asked by the petitioner. The form states specifically on its face that "It is not, however, a final closing agreement under section 3760 of the Internal Revenue Code *206 , and does not, therefore, preclude the assertion of a further deficiency in the manner provided by law should it subsequently be determined that additional tax is due, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax." Petitioner contends that it is illegal and unreasonable to permit a revenue agent to determine additional taxes as due and then, after the taxpayer has paid the amount so determined, to refuse to consider this action as a final and complete settlement of all tax liability. We do not agree. It would be manifestly illegal and unreasonable to ascribe such an effect to the act of a revenue agent as to place in his hands the power to close irrevocably a question of tax liability of a taxpayer. Such a rule would throw wide the door to frauds against the public revenue. Section 3760 of the Internal Revenue Code provides for the method of agreement necessary to finally settle the tax liability. The settlement here in question was not under the provisions of that section. Petitioner's contention is without merit. Estate of Charles H. Thieriot, 7 T.C. 769; Botany Worsted Mills v. United States, 278 U.S. 282. *207 Petitioner contends that the stock received by him upon liquidation of Refined Syrups Sales Corporation was acquired in a total liquidation by that company which was unconnected in any way with the reorganization which was carried out in the acquisition by Refined Syrups & Sugars, Inc. of all the assets of Refined Syrups Sales Corporation in exchange for preferred and common stock of the acquiring corporation. There is no dispute between the parties as to the fact that the acquisition of the assets of Refined Syrups Sales Corporation constituted a reorganization under section 112(g)(1)(C), I.R.C., and that both of the corporations involved were parties to the reorganization under section 112(g)(2). There is also no disagreement between the parties as to the fact that the receipt by petitioner of the preferred and common stock of Refined Syrups & Sugars, Inc. would not give rise to gain or loss if the liquidation under which such stock was distributed to petitioner was in the dissolution of the liquidating corporation carried out as a part of the plan of reorganization. The question of fact the answer to which determines the issue here is, accordingly, whether *208 or not the dissolution of Refined Syrups Sales Corporation was conceived and carried out as a part of the general plan involving the acquisition of its assets by Refined Syrups & Sugars, Inc. Petitioner urges that the liquidation of Refined Syrups Sales Corporation was in no way necessary to the plan of reorganization; that it was a matter conceived and carried out by the officers and stockholders of the liquidating corporation after the reorganization had been completed. He seeks to establish this fact by his testimony and that of Freeman. Both of these witnesses testified that the matter of the liquidation of that company was not considered or discussed until after the transaction covering the acquisition of its assets by Refined Syrups & Sugars, Inc. and the payment of the consideration for such assets was concluded. They claim that then, for the first time, they took up, as the only interested parties, what was to be done with Refined Syrups Sales Corporation, which then consisted of merely a holding company whose sole assets represented stock in Refined Syrups & Sugars, Inc. We can not accept this evidence as correct in view of what is established by the record of the meetings *209 of the board of directors of Refined Syrups Sales Corporation on December 16 and December 30. The first meeting was held prior to the reorganization. The minutes of that meeting reveal that there was then received and considered the offer of Refined Syrups & Sugars, Inc. to acquire all of Refined Syrups Sales Corporation's assets for stock. The sale of the assets upon this basis was then approved subject to approval by its stockholders. The minutes of this meeting further show that it was unanimously resolved by the board of directors that it was for the best interest of the corporation and its stockholders that, on acceptance of the proposal for the sale of its assets and upon transfer thereof, the corporation should be dissolved. The minutes of this same meeting also reveal that action was taken to constitute the Corporation Trust Company an agent for the purpose of filing a Certificate of Dissolution. In the minutes of the meeting of Refined Syrups Sales Corporation of December 30, which was the date on which its assets were transferred and the stock consideration received, it is recorded that the Certificate of Dissolution of the corporation had been prepared and direction given *210 for it to be filed with the Secretary of State the following day. At this same meeting, which was the last held by the corporation, a distribution in liquidation to petitioner and Mrs. Freeman was directed and the certificates of stock that day received from Refined Syrups & Sugars, Inc. were endorsed over and delivered to the distributees, petitioner and Mrs. Freeman. It is further noted that the stock certificates issued by the latter company to Refined Syrups Sales Corporation were four in number, two being for 30,000 shares of common stock each, and the other two for 1,500 shares of preferred stock each. Petitioner and Mrs. Freeman were to each receive 30,000 shares of common and 1,500 shares of preferred. Thus it is evident that even the issuance of this stock by the acquiring corporation was with the knowledge and understanding of not only the liquidation of Refined Syrups Sales Corporation but also of the exact distribution which would be made to the interested parties. Upon this record we must and do find that the dissolution of Refined Syrups Sales Corporation and the distribution of this stock to petitioner were part of the plan of reorganization as carried out. Consequently, *211 petitioner must be deemed to have exchanged his stock in Refined Syrups Sales Corporation for stock in Refined Syrups & Sugars, Inc. as an incident of a reorganization under section 112, I.R.C., and the transaction did not give rise to gain or loss. Upon the final issue respondent admits that the fees paid by petitioner to his attorneys, and here involved, are allowable deductions, but contends that there is no showing that the amount paid was in excess of $6,200. The amount of the payment claimed by petitioner was in the sum of $6,349. This was the amount originally claimed on the return and disallowed by the revenue agent. There is in evidence the cancelled check signed by petitioner, payable to the law firm in question, in the amount of $6,349. We think petitioner has sustained his contention that this amount was paid. Accordingly, we hold that petitioner is entitled to the deduction of this sum. Decision will be entered under Rule 50.