MARION et al. v. GLENN, Collector of Internal Revenue.

Civil Action No. 919.

District Court, W. D. Kentucky, at Louisville.

July 23, 1948.

Byron & Sandidge and Carroll E. Byron, all of Owensboro, Ky., for plaintiffs.

David C. Walls, U. S. Atty., of Louisville, Ky., Sewell Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Courtney C. Hamilton, Sp. Assts. to Atty. Gen., for defendant.

SHELBOURNE, District Judge.

W. S. Hazel, a resident of Daviess County, Kentucky, died February 13, 1941. He was then past eighty-seven years of age. Seventeen years prior to his death, he and his wife, conveyed, by separate deeds, certain of his property to his four children, Mary James Marion, Chloe H. Gropp, J. B. Hazel and Jane Hazel. J. B. Hazel has died since the death of W. S. Hazel.

This action was instituted by Mary James Marion and Chloe H. Gropp to recover a portion of a Federal estate tax, assessed by the Commissioner of Internal Revenue against the estate. The portion sought to be recoverd by plaintiffs amounts to $4,-424.70, with interest from May 31, 1944.

W. S. Hazel executed his will February 20, 1928, which he amended by a codicil June 2, 1938.

The relevant facts were submitted by stipulation which, omitting copies of the deeds, will and codicil attached thereto as exhibits, is as follows:

"It is stipulated by and between the plaintiffs and the defendant, by counsel, that the following stipulation of facts shall be considered as the evidence in this case and that the case be submitted, on the record as it now stands including this stipulation, and that the Court set the case to a day for oral

argument, after which the parties may file briefs.

"1. W. S. Hazel died testate a widower, at age eighty-seven, in Daviess County, Kentucky, on February 13, 1941. His wife, Agnes, died in 1929. Richard H. Slack of Owensboro, Kentucky, qualified as executor under the will of W. S. Hazel. W. S. Hazel left surviving four children, Mary James Marion and Chloe H. Gropp, plaintiffs herein, and J. B. Hazel and Jane Hazel. Plaintiffs and their brother, J. B. Hazel, are the residuary legatees and devisees under the W. S. Hazel will. J. B. Hazel died subsequent to the death of his father. The will of W. S. Hazel dated February 20, 1928 together with a codicil dated January 6, 1930 and a codicil dated June 2, 1938, was duly probated and a copy thereof is attached hereto marked "Exhibit X" and made a part hereof.

"2. W. S. Hazel was born February 2, 1853, and lacked one week of being eighty-eight years of age at the time of his death. At the time of W. S. Hazel's death his four children were aged as follows:

Chloe Hazel Gropp .................. 64
J. B. Hazel ........................ 61
Jane Hazel ......................... 55
Mary James Marion ................. 50

"3. On June 3, 1924, the decedent as the owner, joined by his wife, signed and acknowledged four instruments which purported to be deeds and thereafter caused them to be recorded in the records of the office of the Clerk of Daviess County Court, Kentucky, on the dates and at the book and page numbers indicated below:

| Instrument | Date Recorded | Place Recorded |
|---|---|---|
| Exhibit 4a | December 26, 1924 | Deed Book 113, page 543 |
| Exhibit 4b | December 26, 1924 | Deed Book 113, page 542 |
| Exhibit 4c | December 26, 1924 | Deed Book 113, page 540 |
| Exhibit 4d | December 26, 1924 | Deed Book 113, page 545 |

True copies of the four instruments are attached to the amended complaint of the plaintiffs as Exhibits 4a, 4b, 4c and 4d, and by reference made a part hereof.

"4. Upon the death of W. S. Hazel, Mary James Marion took possession of the property covered by the instrument shown as Exhibit 4a; J. B. Hazel and Julia, his wife, took possession of the property covered by the instrument shown as Exhibit 4b; Anna Jane Hazel's Trustee took possession of the property covered by the instrument shown as Exhibit 4c, and Chloe Gropp took possession of the property covered by the instrument shown as Exhibit 4d.

"5. During the year 1924 the decedent, then of the age of seventy-one years, appeared to be in good health and was active in business and church affairs. His estate in 1924 was worth between $250,000 and and $300,000 and consisted of real estate in Kentucky, Texas and Arkansas, stocks, bonds and a considerable amount of notes secured by liens or mortgages on real estate and personal property. He did considerable money lending for investment purposes. He suffered some severe financial losses in the late '20's and '30's through what turned out to be bad investments. No unusual change in the physical and mental condition of the decedent was noticeable until approximately six months prior to his death in 1941.

"6. After the death of W. S. Hazel his executor filed an estate tax return, form 706, disclosing the execution and recordation of the four instruments, Exhibits 4a, 4b, 4c, and 4d described in paragraph three hereof in Schedule G of the return filed for the estate of the decedent. The value of the properties covered by the four instruments was not included as a part of the gross estate of the decedent in said return.

"Thereafter on or about January 2, 1943, the Commissioner of Internal Revenue determined a deficiency in the federal estate taxes (less previous payments made by the executor) which was duly paid. In determining this deficiency the value of the property covered by the four instruments was not included in the gross estate.

"7. On or about May 24, 1944, plaintiffs and J. B. Hazel were notified that upon a redetermination of the estate tax lia-

bility of the W. S. Hazel estate by the Treasury Department the property covered by the four instruments shown in paragraph 3 was included in decedent's gross estate on the ground that those deeds were testamentary substitutes and transfers intended to take effect in enjoyment or possession at or after death within the meaning of Section 811(c) Internal Revenue Code [26 U.S.C.A. Int.Rev.Code, § 811(c)]. The deficiency arising from the inclusion of the aforesaid property in the gross estate was $5,910.12, plus interest of $726.93, or a total of $6,637.05, which plaintiffs and J. B. Hazel paid to the defendant on May 31, 1944, the plaintiffs each paying $2,212.35. The payments so made by the plaintiffs are the subject of this suit.

"8. The values at which the properties described in the four instruments, Exhibits 4a, 4b, 4c, and 4d, were determined by the Commissioner of Internal Revenue to be includible in the net estate of the decedent were the following to-wit:

To Mary James Marion
(Instrument shown as Exhibit
    4a) ...................... $11,325.00

To J. B. Hazel, et al
(Instrument shown as Exhibit
    4b) ...................... 6,500.00
Trustee for Jane Hazel, et al
(Instrument shown as Exhibit
    4c) ...................... 13,500.00

To Chloe Hazel Gropp,
(Instrument shown as Exhibit
    4d) ...................... 13,500.00
                           $44,825.00

W. S. Hazel, for the period beginning 1924 and ending with his death in 1941, listed the property covered by the aforesaid four instruments in his own name for local ad valorem taxes; paid taxes thereon; collected and kept the rents thereon; made rental contracts covering said property; and made some repairs thereon.

"9. W. S. Hazel's gross estate for the basic tax, as finally determined, including the $44,825.00 shown in paragraph 8, was $175,869.17. His net estate for additional taxation was $102,751.83.

"10. On or about, and not later, than October 18, 1944, plaintiffs filed with the defendant claim for refund and interest and which claim was disallowed on or about January 29, 1945.

"11. At the time of W. S. Hazel's death, his son, J. B. Hazel, had four children and five grandchildren. Mary James Marion had four children. Chloe H. Cropp had six children and six grandchildren. His daughter, Jane Hazel, had no children. Thus W. S. Hazel left surviving him four children, fourteen grandchildren and eleven great-grandchildren.

"12. On or about December 20, 1943, the executor of the estate of W. S. Hazel was discharged by the court upon filing his final settlement for the estate.

"13. One house and lot valued at $2,000 described in the instrument Exhibit 4b was actually and physically turned over to J. B. Hazel prior to the decedent's death and was occupied by J. B. Hazel as a home. He paid no rents thereon to his father and paid the local taxes on that particular property and for this reason it was excluded by the Commissioner from the gross estate of the decedent."

The following language appears in the conveyance to Mrs. Mary James Marion:

" * * * for and in consideration of the love and affection they have for their daughter, Mary James Marion, *do hereby grant, bargain, sell and convey unto Mary James Marion, for and during her life, and at her death the remainder to her surviving children or descendants of same, subject to the life estate of W. S. Hazel,* in the hereinafter described property which is reserved and not herein conveyed. (Emphasis added.)

"To Have and to Hold the above described property *unto the party of the second part for life (Mary James Marion), with the remainder to her surviving children or descendants of same, subject to the life estate of W. S. Hazel in said property.* * * * *"

The following language appears in the conveyance to J. B. Hazel and Julia Hazel:

" * * * *unto J. B. Hazel and Julia Hazel, his wife, parties of the second part, or the survivor of them, for and during*

*their lives, and then to the surviving children or descendants of said children of J. B. Hazel, one of the parties of the second part, subject to the life estate of W. S. Hazel,* one of the parties of the first part, in said property, which is reserved and not herein conveyed * * *

"It is further agreed between the parties, and subject to the conditions herein stated, that said conveyance is made subject to the following conditions; that is, that one-fourth of the gross income from the property herein conveyed to the parties of the second part is to be used in the improvement, repair and upkeep of said property during the lifetime of said second parties and after they come into possession of said property." (Emphasis added.)

The following language appears in the conveyance to H. A. Birkhead, Trustee for Anna Jane Hazel:

"* * * *unto H. A. Birkhead, as Trustee for Anna Jane Hazel for and during her natural life and subject to the conditions hereinafter set out the hereinafter described property, and convey unto her surviving children or their descendants, if any, the remainder in said hereinafter described property situated in the City of Owensboro, subject to the life estate of the said W. S. Hazel,* which is hereby reserved by and to him, *and upon the death of Anna Jane Hazel, without any children or descendants of children, then to J. B. Hazel, Chloe Hazel Gropp and Mary James Marion, for and during their lives, with remainder in fee to their children or descendants of their said children.* * * *

"It is agreed and same is hereby conveyed to H. A. Birkhead, as Trustee for Anna Jane Hazel, for and during her natural life subject to the life estate of the said W. S. Hazel, and upon the condition that one-fourth of the gross income from said property accruing after the expiration of the life estate of said W. S. Hazel is to be applied in painting, building and keeping in repair and adding additional porches and rooms to the houses now located on said property or that may be built hereafter by said W. S. Hazel or be in process of construction at his death.

"It is further agreed by and between the parties of the first part and Anna Jane Hazel that for and in consideration of said conveyance to H. A. Birkhead, as Trustee for her benefit under said deed that said Anna Jane Hazel accepts said conveyance in full satisfaction of any claim present or future she may have in the estate of W. S. Hazel, and agrees that at his death said conveyance shall be in full satisfaction of any interest she might have in his estate." (Emphasis added.)

The following language appears in the conveyance to Chloe Hazel Gropp:

"* * * *unto Chloe Hazel Gropp, party of the second part, for and during her life, and at her death, the remainder to her surviving children or descendants of same,* subject to the life estate of W. S. Hazel, in the hereinafter described property, which is reserved and not herein conveyed. * * *

"It is further agreed between the parties, and subject to the conditions herein stated, that said conveyance is made subject to the following conditions, that is, that one-fourth of the gross income from the property herein conveyed to the party of the second part is to be used in the improvement, repair, and upkeep of said property during the lifetime of said second party and after she comes into possession of said property. (Emphasis added.)

The Court finds as facts the foregoing as stipulated by the parties.

It is contended by the plaintiffs that the real estate embraced in the deeds to decedent's four children was erroneously included in the gross estate of the decedent and that the Commissioner was in error in concluding that the conveyance constituted transfers intended to take effect in enjoyment or possession at or after the death of the decedent within the meaning of Title 26 U.S.C.A. Int.Rev.Code, § 811(c), the pertinent part of which is as follows:

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * * except in case of a bona fide sale

for an adequate and full consideration in money or money's worth. * * *"

The above quoted section was formerly section 302(c) of the Revenue Act of 1926. There was added to that section, by joint resolution of Congress March 3, 1931, and the amendment of 1932, 26 U.S.C.A. Int. Rev.Acts, page 228, a correlative clause including in gross estate for federal estate taxes, any interest "of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."

▮ If this added language were applicable to the present suit, there would be no question but that the property conveyed in the 1924 deeds would be taxable. However, in the case of Hassett v. Welch and Helvering, Commissioner, v. Marshall, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858, the Supreme Court has held the amendment not to be retroactive and to apply only to transfers made subsequent to the date of the amendment.

Plaintiffs contend that the decision of this case is controlled by May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244. The Government contends that that case is not applicable to the facts here involved and that the Supreme Court has sapped the vitality of May v. Heiner by subsequent decisions in the cases of Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996; Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L. Ed. 604, 125 A.L.R. 1368; Fidelity-Philadelphia Trust Company v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782, 159 A.L.R. 227; Commissioner v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, and Goldstone v. United States, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871, 159 A.L.R. 1330, and contends further that the Sixth Circuit in the case of Beach v. Busey, 156 F.2d 496, certio-

rari denied 329 U.S. 802, 67 S.Ct. 493, 91 L. Ed. 685 has recognized the impotency of May v. Heiner as affected by the above subsequent opinions of the Supreme Court.

In addition to the Sixth Circuit, three other Circuits, at least, have handed down opinions in line with the Government's contention. The Ninth Circuit in the case of Commissioner v. Bank of California, 155 F.2d 1; Second Circuit in Commissioner v. Bayne's Estate, 155 F.2d 475, 167 A.L. R. 436 and the Fifth Circuit in the case of Thomas v. Graham, 158 F.2d 561.

The Bayne's case is distinguished from the same Court's former opinion in Commissioner v. Hall's Estate, 2 Cir., 153 F.2d 172. The applicable statutes were the same in both cases.

The Court in the Bayne's case said [155 F.2d 476]:

"This was not a reversion expressly reserved by the trust instrument; it was a reversion created by implication of law because no beneficiary was named to take in the possible contingency that the grantor should die without descendants and without brothers or sisters who had left descendants * * * But we think the petitioner is correct in asserting that the recent Supreme Court decisions in estate tax cases have drawn no distinction between express reversions and implied reversions."

The distinction between the Baynes case and the Hall case is that in the latter the remainder was to the grantor's next of kin and because there can never be a failure of next of kin, it was held that the settlor of the trust had not retained the string which might bring about a reverter by operation of law.

Counsel for plaintiffs vigorously contend that in view of the fact that decedent in the case at bar, at the time of his death in 1941, had four children and five grandchildren, the grandchildren immediately acquired remainder upon the delivery of the deeds by W. S. Hazel. This contention is answered in the case of Gallois v. Commissioner, 9 Cir., 152 F.2d 81, 83, certiorari denied 327 U.S. 798, 66 S.Ct. 898, 90 L.Ed. 1024, where the trustor at the time of her death had eight direct descendants—three children and five grandchildren—

"Retention of a possibility of reverter by the trustor renders the trust estate taxable, and the imminence or remoteness of the likelihood of the revesting contingency's occurrence is not a matter for our consideration."

The Supreme Court in the case of Commissioner v. Field's Estate, 324 U.S. 116, 65 S.Ct. 511, 89 L.Ed. 786, 159 A.L.R. 230, laid down this rule and noted that remoteness is immaterial.

■ Therefore, from these opinions, it appears that where the decedent may survive all designated beneficiaries, there is a possibility that the gift of the corpus will fail for want of beneficiaries and where this possibility is not eliminated by an unconditional gift over, the possibility of reverter by law has exactly the same effect as the grantor had expressly reserved it.

■ In Kentucky, it is well settled that a devise to one for life, with remainder on his death to his then living children creates only a contingent remainder in their favor. Slack v. Downing, 233 Ky. 554, 26 S.W.2d 497; Walker v. Irvine's Executor, 225 Ky. 699, 9 S.W.2d 1020; Coots v. Yewell, 95 Ky. 367, 25 S.W. 597, 26 S.W. 179.

The following Conclusions of Law are therefore made:

■ I. This Court has jurisdiction of this action. 28 U.S.C.A. § 41(5).

■ II. The deeds from W. S. Hazel to his children conveying a life estate to the latter, with remainder to their children or their descendants, created a contingent remainder in the remaindermen living at the time of the execution of the deed and should his children and their descendants have pre-deceased W. S. Hazel, he would have, by operation of law, acquired the remainder interest.

III. Upon the decedent's survival of the designated beneficiaries, the conveyance to the remaindermen would have failed and this possibility, however remote, " * * * sweeps into the gross estate all property, the ultimate possession or enjoyment of which is held in suspense until the moment of the decedent's death or thereafter." Beach v. Busey, supra [156 F.2d 497].

IV. The redetermination of the estate taxes by the Commissioner against the estate of W. S. Hazel was proper.

V. The plaintiffs are not entitled to recover in this action and a judgment dismissing the petition will be tendered by Counsel for the defendant.