Estate of Charles H. Thieriot, Frances T. Thieriot, as Executrix, and Charles H. Thieriot, Jr., as Executor, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 8573.    Promulgated November 8, 1946.

*Eugene L. Bondy, Esq.*, for the petitioners.
*J. Frost Walker, Jr., Esq.*, for the respondent.

## OPINION.

HARLAN, *Judge*: The petitioners allege in the petition that the respondent is estopped from including in gross estate the proceeds from the Aetna Life Insurance Policy in the amount of $97,347 because of a claimed settlement agreement entered into in 1944, on the faith of which they distributed assets and changed their position to their detriment. On brief they contend that the respondent erred in asserting the deficiency in question after the executors had agreed to adjust the tax liability of the estate on the basis of an overassessment in the amount of $3,047.84 and certain expenses of administration to be paid thereafter, and the Commissioner had issued a certificate of overassessment in the amount of $3,047.84, which amount was arrived at by excluding proceeds of insurance in the amount of $97,347.

We have examined all the facts in the record and we find nothing to warrant an estoppel. The petitioners admit that section 3760 of the Internal Revenue Code specifically provides for a formal method of arriving at a final closing agreement and that such a method was not adopted here. The fact that petitioners chose to regard the certificate of overassessment as a final settlement agreement does not bring it within the terms of the statute, nor does it preclude the Commissioner from reopening the case within the statutory period and making such adjustments as he may deem proper. After the issuance of the certificate of overassessment the way was open for the petitioners to negotiate a final closing agreement with the Commissioner, as provided

in section 3760 of the Internal Revenue Code,[1] before further distribution of the assets of the estate. Their failure to do so does not bind the Commissioner in the performance of his duties nor estop him from redetermining the tax liability of the estate.

The Commissioner included in the gross estate the proceeds from policy No. N 308890 paid at the decedent's death in the amount of $97,347, on the ground that they were taxable within the meaning of section 811 (g) of the code. He now contends that they were also properly includible under the provisions of section 811 (c)[2] as a transfer intended to take effect in possession and enjoyment at or after death.

The petitioners contend that, under the rule in force at the time of the decedent's death, January 10, 1941, the test of whether the proceeds of a policy of insurance taken out by the decedent on his own life, but payable to another, was includible in the gross estate of the decedent, was whether the insured at the time of his death possessed any "legal incidents of ownership" in the policy. He argues that the surviving wife was from the inception of the contract its sole and unrestricted owner; that the decedent at the time of his death possessed none of the incidents of ownership in the policy and, therefore, the proceeds from the policy are not includible in the gross estate either under section 811 (c) or section 811 (g) of the Internal Revenue Code.

The language of section 811 (g) is very broad. If strictly construed, it would include in the gross estate the proceeds of all insur-

---

[1] SEC. 3760. CLOSING AGREEMENTS.

(a) AUTHORIZATION.—The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for which he acts) in respect of any internal revenue tax for any taxable period.

(b) FINALITY.—If such agreement is approved by the Secretary, the Under Secretary, or an Assistant Secretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

(1) The case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

(2) In any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith shall not be annulled, modified, set aside, or disregarded.

[2] SEC. 811. GROSS ESTATE.

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

(g) PROCEEDS OF LIFE INSURANCE.—To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

ance in excess of $40,000 payable to beneficiaries other than the decedent's representatives whenever the policy was "taken out by the decedent upon his own life." But Treasury regulations and the courts have never construed this sentence literally, cf. *Chase National Bank* v. *United States*, 116 Fed. (2d) 625–627, and, while no change was made in the statute from its appearance in the Revenue Act of 1918 as section 402 (f) (subsequently changed to 302 (g)—section 811 (g), Internal Revenue Code) until the Revenue Act of 1942, numerous amendments were made to the regulations occasioned by court decisions.

The issue here is whether the proceeds from the insurance policy on decedent's life, payable to the beneficiary at decedent's death, minus the statutory exemption of $40,000, are properly includible in the gross estate. The parties agree that they are so includible if the decedent possessed at the time of his death any "legal incidents of ownership" in the policy, but they are not in agreement as to what constituted "legal incidents of ownership" on January 10, 1941, when decedent died.

The petitioner argues that the "legal incidents of ownership" are to be determined from Regulations 80 (1937 Ed.), arts. 25 and 27, as amended by T. D. 4729, March 18, 1937, C. B. 1937–1, pp. 284–288, which remained unchanged from that date to January 10, 1941, when it was again amended by T. D. 5032, C. B. 1941–1, p. 427. The respondent argues that Regulations 105, approved February 18, 1942, which includes the pertinent provisions of T. D. 5032, is applicable here.

The statute, as construed by the regulations, requires the inclusion in the gross estate of the decedent of the proceeds of any insurance in excess of $40,000 receivable by beneficiaries other than the decedent's representatives if the decedent possessed at the time of his death any of the legal incidents of ownership. Prior to March 18, 1937, Regulations 80 (1934 Ed.), article 25, provided in part as follows:

* * * Insurance is considered to be taken out by the decedent in all cases, whether or not he makes the application, if he pays the premiums either directly or indirectly, or they are paid by a person other than the beneficiary, or decedent possesses any of the legal incidents of ownership in the policy. Legal incidents of ownership in the policy include, for example: The right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The decedent possesses a legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent.

Following the decisions of the Supreme Court in *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, and *Bingham* v. *United States*, 296 U. S. 211, Regulations 80 was amended by T. D. 4729 (approved March 18, 1937), which deleted the phrase "The decedent possesses a

legal incident of ownership if the rights of the beneficiaries to receive the proceeds are conditioned upon the beneficiaries surviving the decedent." Thereafter the only criterion provided in the regulations as to whether insurance was taken out by the decedent and the proceeds were includible in the gross estate was the "legal incidents of ownership," which included "for example the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc." No further amendment was made to the regulations construing section 811 (g) until January 10, 1941.

On January 29, 1940, the Supreme Court decided *Helvering* v. *Hallock*, 309 U. S. 106. This case repudiated the basis of the decision in *Helvering* v. *St. Louis Union Trust Co.*, *supra*, and related cases, and established the principle that if in an *inter vivos* transfer of property there is a provision for a reversion to the grantor in the event the grantee predeceases him, the value of the property is includible in the gross estate of the decedent grantor. On March 4, 1940, the Court of Claims decided *Bailey* v. *United States*, 31 Fed. Supp. 778; certiorari to the Supreme Court dismissed September 27, 1940. This case involved policies of life insurance assigned by the insured so as to make his wife and son life owners, and the survivor unconditionally entitled to the proceeds upon the death of the insured, provided the beneficiaries survived the insured, but if the insured survived both, he became the life owner of the policies and the proceeds of insurance were payable to his representatives. The Court of Claims held, on the authority of *Helvering* v. *Hallock*, *supra*, that the proceeds in excess of $40,000 were includible in the gross estate. On December 23, 1940, the Circuit Court of Appeals for the Second Circuit, in *Chase National Bank* v. *United States*, *supra*, held, on authority of *Helvering* v. *Hallock*, *supra*, that, where the proceeds of a life insurance policy and of paid up additional insurance, purchased with dividends, were payable to the insured's wife if she survived the insured, otherwise to the insured's estate, and the power to revoke the policy or change the beneficiary was not expressly retained by the insured, the death of the insured terminated the possibility of reverter in the insured in the event that the wife predeceased him and fixed the right to the proceeds unalterably in the wife, hence the proceeds were includible in insured's gross estate subject to estate tax. Thereafter on January 10, 1941, the Treasury Department, in T. D. 5032, *supra*, amended its Regulations 80 to conform to these decisions. Article 27 was amended to read:

ART. 27. *Insurance receivable by other beneficiaries.*—The amount in excess of $40,000 of the aggregate proceeds of all insurance on the decedent's life not

receivable by or for the benefit of his estate must be included in his gross estate as follows:

> (1) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) after January 10, 1941, the date of Treasury Decision 5032, and
>
> (2) To the extent to which such insurance was taken out by the decedent upon his own life (see article 25) on or before January 10, 1941, and with respect to which the decedent possessed any of the legal incidents of ownership at any time after such date or, in the case of decedent dying on or before such date, at the time of his death.

Legal incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The insured possesses a legal incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him.

These amendments were carried into Regulations 105.

It is clear that the amendment of Regulations 80, article 27, by T. D. 5032 was for the purpose of conforming its construction of section 811 (g) to the decisions of the courts, *Helvering* v. *Hallock, supra; Bailey* v. *United States, supra;* and *Chase National Bank* v. *United States, supra,* after the former regulations had fallen with the cases on which they were based. Certainly the amendment to Regulations 80 by T. D. 4729 (March 18, 1937), whereby reversionary interests were excluded as an incident of ownership, did not have any higher dignity than the decisions of the Supreme Court on which it was bottomed, evidently *Helvering* v. *St. Louis Union Trust Co., supra.* When such decisions were overruled by the Supreme Court in *Helvering* v. *Hallock, supra,* the amendment to the regulations founded thereon ceased to be authoritative as a construction of the statute. When the Commissioner again on January 10, 1941, by T. D. 5032, restored a reversionary interest as an incident of ownership in a life insurance policy, he was reflecting the existing and established law as laid down in the *Hallock, Bailey,* and *Chase National Bank* cases.

We think that under the rationale of the three preceding cases the decedent possessed a legal incident of ownership if, as here, his death was necessary to terminate his interest in the insurance, "as, for example if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him," regardless of when Treasury Regulations 80 was amended. Cf. *Hock* v. *Commissioner,* 152 Fed. (2d) 574.

Petitioners rely on a memorandum opinion of this Court.[3] If this opinion is authority for the legal propositions submitted by petitioners,

---

[3] *Estate of James W. Henry* (Docket No. 109513), entered Jan. 16, 1943.

it is obvious that those propositions have been repudiated in principle by *Hock* v. *Commissioner* (1945), *supra; Goldstone* v. *United States* (1945), 325 U. S. 687; *Liebmann* v. *Hassett* (1945), 148 Fed. (2d) 247; and *Schongalla* v. *Hickey,* 149 Fed. (2d) 687.

Petitioners argue that under the terms of the contract the wife was the absolute owner of the policy, with power to change the beneficiary, surrender or cancel the policy, assign it, pledge it for a loan, or obtain a loan against the surrender value; that she made certain changes as indicated in our findings of fact to the end that she changed the "possibility of reversion" to contingent remainder; and that technically the decedent had no "possibility of reversion which was cut off by his death." While it is true that the decedent's wife, as life beneficiary, made certain changes by endorsement on the policy in both the death and the life beneficiaries which extended to her son and daughter, she did not change the provision for reversion to the insured. She only postponed the reversion until after the death of the survivor. We think the observation made by the lower court in *Goldstone* v. *United States,* 52 Fed. Supp. 704, in a somewhat similar situation, is pertinent. "The plaintiffs have placed too much importance on the word 'reverter' * * * if any interest therein could come to him by reason of any contingency, then it comes squarely within the doctrine of *Helvering* v. *Hallock.*" It is plain that, while the life beneficiary had the power to erase the decedent's reversionary interest, she did not exercise it. In *Goldstone* v. *United States,* 325 U. S. 687, the Supreme Court said:

* * * Whatever the likelihood of the exercise of this power, it is a fact that the wife did not change the beneficiaries or surrender the contracts so as to destroy decedent's reversionary interest. The string that the decedent retained over the proceeds of the contract until the moment of his death was no less real or significant, because of the wife's unused power to sever it at any time.

Moreover, the fact that the life beneficiary had absolute control over the policy and could surrender it and take the cash value is not controlling. Since the power to surrender was not in fact exercised before the death of the insured, then the death of the insured was the intended event which cut the string by which the proceeds of the policy might be brought back to the insured and brought them into the possession and enjoyment of the beneficiary. *Hock* v. *Commissioner, supra.*

There is no doubt that the policy here was a contract of insurance and involved an actual "insurance risk" within the import of section 811 (g) of the Internal Revenue Code. Cf. *Helvering* v. *Le Gierse,* 312 U. S. 531. It was so treated by the Commissioner in the deficiency notice, where, in the statement attached thereto, the following explanatory statement is made:

*Insurance*

Policy No. N–308890 issued by Aetna Life Insurance Co.—included for Federal estate tax, since the contingent interest decedent had therein gave him a legal incident of ownership which renders the policy taxable within the meaning of section 811 (g) of the Internal Revenue Code.

We hold that the amount here in question is properly includible in the gross estate of the decedent under section 811 (g) as proceeds of life insurance taken out by the decedent, *Helvering* v. *Hallock, supra; Goldstone* v. *United States, supra; Hock* v. *Commissioner, supra; Schongalla* v. *Hickey, supra; Chase National Bank* v. *United States, supra.*

In computing the deficiency the entire amount of the proceeds of life insurance under policy No. N 308890 was included in the gross estate, but the respondent in his brief states that "the estate has been allowed the full exemption of $40,000, provided by section 811 of the Code with respect to insurance other than that involved here." This statement may be verified in the recomputation of the estate tax liability under Rule 50.

This opinion supplants the former opinion promulgated herein September 19, 1946.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

ARUNDELL and LEECH, *JJ.*, dissent.