Estate of Paul G. Leoni, Deceased, Nelly Leoni, Executrix v. Commissioner.
Estate of Paul G. Leoni, Deceased v. Commissioner
Docket No. 15167.
United States Tax Court
1948 Tax Ct. Memo LEXIS 65; 7 T.C.M. (CCH) 759; T.C.M. (RIA) 48213; October 20, 1948
*65 The respondent included in decedent's estate the entire value of certain Florida properties, which at the time of decedent's death were held in the names of decedent and his wife as tenants by the entirety. Held, it has been established that decedent's wife furnished one-half the consideration paid for such properties, and only one-half the entire value thereof is properly includable in decedent's estate under section 811 (e) of the Internal Revenue Code. The respondent included in decedent's estate the market value at the time of his death of six shares of the common stock of E. I. duPont de Nemours & Co. Held, that it has been established said shares were the individual property of decedent's wife, and the value of such shares was erroneously included in decedent's estate. After decedent's death his widow received from decedent's employer, pursuant to a contract, post-death salary of $10,500 and a salary bonus of $613.85. Held, such amounts were properly includable in decedent's estate. Under a contract of employment between the decedent and his employer, the latter agreed to pay to decedent's widow the sum of $2,500 annually for a period of eight years. *66 Held, the commuted value of said right is properly includable in decedent's estate under section 811 (c) of the Internal Revenue Code. The deductibility of certain attorney's fees and expenses determined. Hope Root, *67 Esq., Ingraham Bldg., Miami, Fla., for the petitioner. Edward L. Potter, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves estate tax liability in the amount of $18,416.70. The issues are: 1. Whether the respondent erred in including in decedent's estate the entire value of the house and furnishings situate on Palm Island, Miami Beach, Florida. 2. Whether the respondent properly included in decedent's estate the value of six shares of the common stock of E. I. duPont de Nemours & Company. 3. Whether the respondent properly included in decedent's estate post-death salary of $10,500 and salary bonus of $613.85, payable to decedent's widow by his employer. 4. Whether the respondent properly included in decedent's state the value of his widow's right to receive from his employer annual payments of $2,500 for a period of eight years after decedent's death. 5. Whether petitioner is entitled to deduct certain attorney's fees and administration expenses. The case was submitted on oral testimony and documentary evidence. Findings of Fact Nelly Leoni is the widow of decedent, Paul Leoni, and the duly *68 qualified executrix of his will. Decedent died on June 23, 1943, a citizen of the United States and a resident of the State of Florida. Decedent at the time of his death was 56 years of age, and left surviving his widow and three sons. An estate tax return was timely filed with the collector of internal revenue for the district of Florida at Jacksonville, Florida. The estate tax return, under the heading "Jointly Owned Property," disclosed a valuation of $4,500 for a one-half interest in a house and lots located at Palm Island, Miami Beach, Florida. The respondent increased the value of the properties to $18,000, and determined the entire amount to be includable in decedent's gross estate. Decedent and Nelly Leoni were married in April 1913 at Nuremberg, Bavaria. Decedent was of German and nationality and his wife was of French nationality. At the time of their marriage decedent entered into a written agreement with his wife's father. This agreement provided that the latter was transferring to the decedent the sum of 100,000 German marks, which was to be held by him as the joint property of Nelly Leoni and the decedent. It further provided that anything the decedent earned and saved, *69 or inherited, would also be the joint property of them both. The mark at that time had an exchange value of twenty-five cents in United States currency. The decedent received no property by inheritance. At the beginning of World War I, the decedent was in England, carrying on business for the firm of Wm. H. Muller & Company, Inc., of Rotterdam, Holland, His wife was then in Alsace-Lorraine. In 1915 the decedent was sent to America to open an office for his firm in New York City. His wife accompanied the decedent to this country. Subsequently, the decedent transferred the fund received from his wife's father to the United States, which fund was invested in American securities. In May 1940, the decedent sold some of said securities and with the proceeds purchased the Florida properties involved in this proceeding. Title to the properties was taken in the names of the decedent and his wife as tenants by the entirety. At the time decedent came to America in 1915, he was receiving a salary of 30,000 francs per year, or the then equivalent of $6,000 in United States currency. In 1923, the decedent made a new contract with his employer under which he was to receive a salary of $21,000 *70 per year, plus 10 per cent of the net profits. Decedent's position required him to live well and to entertain. He and his wife lived up to his income. Decedent carried insurance on his life of the face value of $100,000, on which the premiums aggregated between $3,000 and $4,000 annually. Included among the papers of decedent at the time of his death was a certificate for six shares of the common stock of duPont de Nemours Company, having a market value of $928.50. This item was not reported in the estate tax return, but was included in decedent's gross estate by the respondent. The certificate was in the name of Nelly Leoni, and endorsed in blank by her. She testified that the stock was purchased by her from her personal savings and was endorsed by her and used as collateral for the purchase of Lerner Company stock, which was later sold and the duPont shares returned. In 1938, decedent negotiated with his employer for a new salary contract. Under date of July 15, 1938, the following contract was executed which was in effect at the time of decedent's death: "CONTRACT between "N. V. Wm. H. Muller & Co., Rotterdam, acting also in their capacity of shareholders of Wm. H. Muller *71 & Co. Inc., New York, hereinafter called 'N.V.' and Paul G. Leoni, New York. "Paragraph No. 1. "The N.V. in accordance with the resolution of their Board, dated 30th June 1938, herewith confirm the reappointment of Mr. Leoni as Managing Director and President of Wm. H. Muller & Co. Inc., New York, and of the Iron & Ore Corporation of America, New York (whose shares are controlled by Wm. H. Muller & Co. Inc., New York) at a salary of USA $21,000, - per annum, plus 10% of the net profit of the New York companies above mentioned. "Paragraph No. 2. "The present contract to have effect from the 1st of April 1938 and to remain in force until the 1st of April 1943, with the understanding that unless notice is given at least six months before the expiration, same will continue every time for a further period of one year. "The above salary of $21,000, - per annum will be paid to Mr. Leoni until the end of this period, unless the profits according to the joint balance sheet of the New York companies should show a loss for two consecutive calendar years. In the event of the New York companies showing a loss for two consecutive calendar years Mr. Leoni's salary shall then be reduced *72 for the balance of the period of the contract to a figure to be determined by the N.V., but it shall in no case be less than fifteen thousand Dollars ($15,000, -) per annum. "Paragraph No. 3. "If at the termination of the agreement referred to in Par. 1 and 2 same should not be continued, the N.V. will, at Mr. Leoni's request, entrust him with the Supervising Management of the American interests of the N.V. until Mr. Leoni will reach the age of 60 years or so much longer as might be agreed upon. During the time that Mr. Leoni exercises such supervising function, the salary and bonus will be one half of the salary and bonus mentioned in paragraph No. 1. "Paragraph No. 4. "After reaching the age of 60 years, either at the request of the N.V. or at the request of Mr. Leoni, the latter will or may retire from his position of either active or supervising Management (as the case may be); on retirement at the age of 60 years or later (as the case may be) Wm. H. Muller & Co., Inc., New York, will pay to Mr. Leoni as from the date of such retirement a yearly pension of the following amounts: up to the date that Mr. Leoni reaches the age of 65 years: USA $5,000, - per annum, thereafter *73 up to the date that Mr. Leoni reaches the age of 70 years: USA $4,000, - per annum, thereafter until his death: USA $3,000, - per annum. These amounts will be payable every three months at the end of each quarter and are guaranteed by the N.V. "Paragraph No. 5. "In the event of Mr. Leoni's death, while still in the employ of the N.V. or their New York firms respectively, his salary will continue for the period of 6 months payable to his widow or, in case his wife predeceases him, to his estate. Any bonus due for the calendar year, in which the death of Mr. Leoni occurs, is also payable to his wife or his estate respectively. "Paragraph No. 6. "If after the death of Mr. Leoni, Mrs. Nelly Leoni is left behind as his widow, the N.V. will pay to her a yearly amount of USA $2,500, - during a period of 8 years, such payment to start 6 months after the death of Mr. Leoni, if such death occurs while still in the employ of the N.V., or immediately, if such death occurs after his retirement. "Paragraph No. 7. "The N.V. as shareholders of Wm. H. Muller & Co., Inc., New York, herewith consents that the stipulations of the contract will be incorporated in the minutes of their *74 American Company. "Paragraph No. 8. "The present contract is subject to Dutch law. Disputes in connection with this contract shall exclusively be submitted to the Dutch Courts. "Rotterdam, 15th July 1938. "Wm. H. Muller & Co., N.V. "[Signatures]" Pursuant to the terms of the aforesaid contract, the employer paid to decedent's widow one-half of decedent's salary, amounting to $10,500, and a bonus in the amount of $613.85. Beginning six months after the death of the decedent, the employer has paid to his widow, under such contract, the amount of $2,500 per year, less the withholding tax. She rendered no services to decedent's employer. The respondent included in the decedent's gross estate the value of the right of the decedent's widow to receive the annuity of $2,500 for the period of eight years under the aforesaid contract, which he determined to be $16,831.81 as of the date of decedent's death. Opinion The first issue presents the question whether the respondent erred by including the amount of $18,000, representing the total value of the house and lots on Palm Island, in decedent's gross estate. The amount is not in dispute. Petitioner contends that the Florida *75 properties were held by the decedent and his wife as tenants by the entirety and, under section 811 (e) of the Internal Revenue Code, [1] only one-half the value thereof is includable in decedent's gross estate. *76 The record establishes that at the time the decedent was married to Nelly Leoni, her father transferred to him 100,000 marks, or the equivalent of $25,000, with the understanding that this fund was to be held by him as the joint property of decedent and his wife, and with the further proviso that whatever decedent earned and saved, or inherited, was also to be held for their joint benefit. Decedent's widow was unable to produce the written contract between the decedent and her father. While her secondary evidence, received without objection, as to its contents was somewhat sketchy, it was definite as to the amount transferred and as to the conditions under which it was made. Accepting the testimony of petitioner as sufficiently establishing the material substance of the marriage agreement, and we find no valid reason for not doing so, we think that petitioner has satisfactorily shown that decedent's widow was a joint owner of the original fund, a part of the proceeds of which were used in the purchase of the Florida properties in question. We, therefore, conclude that only one-half the value of said properties, the entire value of which the respondent determined to be $18,000, is *77 properly includable in decedent's estate for estate tax purposes. The second issue relates to the ownership of the six shares of the common stock of E.I. duPont de Nemours & Company. The evidence satisfies us that the stock was originally purchased by decedent's widow and the certificate issued in her individual name. The endorsement in blank was for the purpose of using the shares as collateral only. The testimony of the widow was supported by certain documentary evidence. We conclude that at the death of the decedent such shares were her individual property, and that the respondent erred in including the market value thereof, amounting to $928.50, as a part of decedent's gross estate. The third issue presents the question whether the amount of $10,500, representing salary for a six-month period, and a salary bonus of $613.85, paid to decedent's widow after decedent's death by his employer, are properly includable in decedent's estate. Petitioner, on brief, states that no argument will be made on this issue. Assuming that petitioner has not abandoned this assignment of error, we think it clear that no valid argument could be made. We hold that the respondent properly included *78 such amounts in decedent's estate. The fourth issue is whether the respondent properly included in decedent's estate the value of his widow's right to receive from decedent's employer an annuity of $2,500 for a period of eight years after decedent's death. The respondent determined the value of such right to be $16,831.81, which amount petitioner does not contest. It is the contention of petitioner that since the payments to be made under paragraph 6 of the employment contract of July 15, 1938 were given solely to the decedent's widow, the decedent or his estate had no right, title or interest to, or in, any part of the payments and, therefore, decedent made no transfer "in contemplation of or intended to take effect in possession or enjoyment at or after his death," within the purview of section 811 (c) of the Internal Revenue Code. We do not agree. The services to be rendered by the decedent furnished the consideration for the employer's promise to make the prescribed payments to his widow after decedent's death. His widow testified that the decedent desired such provision to be incorporated in the employment contract in lieu of a salary increase. We *79 think there was a transfer of property procured through the performance of services by the decedent, with the intent of having it pass at the time of his death. The death of the decedent was the operative fact which matured the promisor's duty to pay and completed the shifting of the economic benefits of property. Transfers of like purport have been held to come within the purview of section 811 (c) of the Code, requiring the value of the property right transferred to be included in decedent's estate. Chase Nat. Bank v. United States, 278 U.S. 327; Goldstone v. United States, 325 U.S. 687. We, therefore, sustain the determination of the respondent as to this issue. The final issue involves petitioner's right to deductions for certain attorney's fees and expenses. Under section 812 (b) of the Code, petitioner is entitled to deduct such expenditures to the extent shown to be reasonable and to have been paid. Respondent concedes that the parties can agree upon the amounts of such expenditures in the computation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(e) Joint Interests. - To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: Provided, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: Provided further, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.↩