FIDELITY–PHILADELPHIA TRUST
COMPANY and Robert B. Haines, III,
Executors of the Will of Mary H.
Haines, Plaintiffs,

v.

Francis R. SMITH, Collector of Internal
Revenue, Defendant.

Civ. A. No. 14406.

United States District Court
E. D. Pennsylvania.

June 27, 1956.

Montgomery, McCracken, Walker &
Rhoads, Robert T. McCracken and John
B. Leake, Philadelphia, Pa., for plain-
tiffs.

Richard M. Roberts and Andrew D.
Sharpe, Washington, D. C., W. Wilson
White, U. S. Atty., Philadelphia, Pa.,
H. Brian Holland, Asst. Atty. Gen., for
defendant.

KRAFT, District Judge.

Plaintiffs seek to recover from the
Collector of Internal Revenue a refund
of estate tax deficiency assessed against
and paid by the estate of Mary H.
Haines, deceased, in the amount of
$103,280.84 with interest. Detailed
factual admissions, stipulations and
findings are filed contemporaneously.

In April, 1934 Mrs. Haines, then aged
76, purchased a single premium life in-
surance policy in the amount of $200,-
000 for a premium of $179,358. On the
same day she purchased from the same
insurance company for a premium of
$40,642 a non-refundable annuity con-
tract which provided an annual pay-
ment of $5,026 to her for life, any bal-
ance on her death reverting to the com-
pany. In October, 1934 Mrs. Haines
purchased from the same company an-
other single premium life insurance poli-
cy in the amount of $100,000 for a pre-
mium of $90,642. On the same day she
also purchased from that company for
a premium of $19,358 a non-refundable
annuity contract which provided an an-
nual payment of $2,440.64 to her for life,
any balance at her death reverting to
the company.

Both life insurance policies issued by
this company designated as equal pri-
mary beneficiaries the four named chil-
dren of Mrs. Haines and designated the
Fidelity-Philadelphia Trust Company,
as trustee under a trust agreement, as
contingent beneficiary of the share of
any of the children of Mrs. Haines who

predeceased her. Pursuant to her written application for the policies each of these two life policies was issued designating her as the "Insured" and containing the provision noted in the margin.[1]

Later in October, 1934 Mrs. Haines purchased from a different company a third single life insurance policy in the amount of $50,000 for a premium of $43,491. On the same day she purchased from that company for a premium of $10,509 a non-refundable annuity contract which provided an annual payment of $1,295.56 to her for life, any balance at her death reverting to the company. Mrs. Haines' four children were named as beneficiaries of this life policy in which she reserved no right to change the beneficiaries; however, as issued, the policy proceeds were payable to her executors or administrators if her four children predeceased her. Thereafter, by assignment, Mrs. Haines included this life policy in a schedule forming part of the trust agreement between her and Fidelity-Philadelphia Trust Company and thereupon nominated that company, as trustee, to be contingent beneficiary of the policy which was amended so to provide on November 22, 1934. Under the terms of the trust agreement Mrs. Haines had reserved to herself all benefits, privileges and options available to her under this life policy including the rights of dividend receipt, assignment and surrender. She had reserved also the right to change, amend or revoke the trust agreement. On July 6, 1938 Mrs. Haines amended the trust agreement by assigning irrevocably to the trustee for the purposes of the trust all her right, title and interest in this and any other policy under the trust and by irrevocably empowering the trustee to exercise and enjoy all options, benefits, rights and privileges under this and other policies. By the same amendment she further provided that the trust agreement as so amended was thereafter unalterable and irrevocable. After July 6, 1938 neither Mrs. Haines nor her estate had any beneficial or reversionary interest in the trust or any reversionary interest in any of the three life policies.

In 1935 the four children filed appropriate returns reporting the receipt by each, as gifts from their mother, of a one-fourth interest in each of the life policies. In the same year Mrs. Haines suitably reported gifts of the three life policies to her children and paid gift taxes thereon.

The insurance companies required that the annuity contracts be purchased as a condition of issuance of the respective life policies. The annuity contracts and the annuity payments made to Mrs. Haines thereunder were not based upon or in any way dependent on the premiums paid by her for the respective life policies. The insurance companies would have issued these annuity contracts to Mrs. Haines or to any other person of her age for the same premiums without purchase of any life policies.

The deficiency assessment and the denial of the plaintiffs' refund claim were based on the contention that the life insurance policies were an investment rather than life insurance and that the value was taxable in decedent's gross estate under Section 811(c) of

[1]. "Rights: Anything in this policy to the contrary notwithstanding, prior to the maturity of this policy, the Insured's children Isabella H. Miller, Margaret W. Haines, Robert B. Haines and Charles H. Haines jointly, the survivors or survivor, if none of said children be living, then the living children of said children of the Insured, jointly or the survivors or survivor, if none of the children of said children of the Insured be living, then to the executors or administrators of the last survivor of said children of the Insured and the children of said children of the Insured, some of the beneficiaries may, without the consent and to the exclusion of the Insured or any other beneficiary, receive, exercise, and enjoy every benefit, option, right and privilege conferred by this policy or allowed by the Company."

the Internal Revenue Code, 26 U.S.C. § 811(c),[2] either as transfers intended to take effect in possession or enjoyment at or after death or as a transfer in decedent's lifetime of property, the right to income from which the decedent retained for life.

A transfer in which the transferor retains the income for life is quite different from a transfer intended to take

---

2. "§ 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

  \* \* \* \* \* \* \*

"(c) [as amended by Section 7(a) of the Act of October 25, 1949, c. 720, P.L. 378 (81st Cong.\*)] Transfers in con-

\* Section 7(b) of the Act of October 25, 1949 made this section as amended applicable to estates of decedents dying after February 10, 1939.

templation of, or taking effect at, death.

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death—. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter; or

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death \* \* \*

"(2) Transfers taking effect at death—transfers prior to October 8, 1949.—An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property. For the purposes of this paragraph, the term 'reversionary interest' includes a possibility that property transferred by the decedent (A) may return to him or his estate, or (B) may be subject to a power of disposition by him, but such term does not include a possibility that the income alone from such property may return to him or become subject to a power of disposition by him. The value of a reversionary interest immediately before the death of the decedent shall be determined (without regard to the fact of the decedent's death) by usual methods of valuation, including the use of tables of mortality and actuarial principles, pursuant to regulations prescribed by the Commissioner with the approval of the Secretary. In determining the value of a possibility that property may be subject to a power of disposition by the decedent, such possibility shall be valued as if it were a possibility that such property may return to the decedent or his estate."

Section 7(b) of Act of October 25, 1949, c. 720, P.L. 378 (81st Cong.)

"(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811(c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

"(1) a transfer made prior to March 4, 1931; or

"(2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516). No interest shall be allowed or paid on any overpayment resulting from the application of subsection (a) with respect to any payment made prior to the date of the enactment of this Act."

effect in possession or enjoyment at or after death. Subsection (B) of Section 811(c) (1) of the Revenue Code of 1939 applies to the former and subsection (C) of that Section to the latter. The transfer by the present decedent occurred before October 7, 1949. Hence, even if Section 811(c) (1) (C) were applicable the inclusion of the value of the life insurance policies is barred by Section 811(c) (2) since the decedent retained no reversionary interest in the property transferred arising by the express terms of the instrument of transfer.

The defendant's earlier position, that the value of the three life policies were includible in the decedent's gross estate as transfers intended to take effect in possession or enjoyment at or after her death, appears to have been abandoned by the defendant in his brief and oral argument.

Determination of whether the value of the life policies are includible in decedent's estate as a transfer in her lifetime of property, the income or right to income from which she retained for life, involves a consideration of the applicability and rationale of the conflicting decisions upon which plaintiffs and defendant rely. Plaintiffs' prime dependence is upon Bohnen v. Harrison, 7 Cir., 199 F.2d 492.[3] Defendant is afforded support by Burr v. Commissioner of Internal Revenue, 2 Cir., 156 F.2d 871;[4] Conway v. Glenn, 6 Cir., 193 F. 2d 965, and Estate of Reynolds v. Commissioner, 45 B.T.A. 44.

In the Burr case the decedent purchased three life policies and an annuity contract and irrevocably assigned the life policies to his children. The Court said:

"The two purchases were obviously a single transaction, the annuity premium being part of the consideration for the insurance policies. Unless differentiated because of the subsequent assignment, therefore, the case is squarely within the Supreme Court's decision in Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996, holding the proceeds of the policies taxable under § 811(c)."

With this construction of the Le Gierse case I am unable to agree. In Le Gierse, the life policy and annuity contract were similar to those in the instant case. However, that decedent had never assigned the life policy and still owned it at his death. It was payable to his daughter as beneficiary. His estate contended only that the policy proceeds were "insurance" and, being within the $40,000, exemption, were not includible in the estate. No contention appears to have been made by the estate in Le Gierse that the policy proceeds were not taxable as a transfer intended to take effect at death, if the proceeds were not "insurance." The basic question before the Supreme Court was whether the policy proceeds constituted an amount " 'receivable as insurance' " within the meaning of § 302(g) of the Revenue Act of 1926. The Supreme Court held that, for purpose of determining whether the proceeds of the life policy were "insurance" within the meaning of § 302(g) the life insurance policy and the annuity contract must be read together, and that, so read, no essential element of risk existed and, hence, the proceeds were not true "insurance." The Supreme Court did not say that the two contracts were for all purposes indivisible or inseparable as the Burr and Conway v. Glenn cases decide. On the contrary the right of policy assignment was expressly recognized [5] in Le Gierse, but was deemed immaterial to the question of insurance risk then under consideration.

3. Affirmed per curiam by an equally divided court in 1953, 345 U.S. 946, 73 S.Ct. 863, 97 L.Ed. 1371.

4. Certiorari denied 1946, 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673.

5. 312 U.S. 531, 541, 61 S.Ct. 646, 649, 85 L.Ed. 996.

The Court's statement in Burr that the two purchases were a single transaction and that the annuity premium was part of the consideration for the insurance policies is true only in the sense that the insurance company would not have issued the life policies without the simultaneous purchase of the annuity. Unless the factual situation there presented differed from the present case or was misconstrued, it was erroneous to infer that the premiums for the life policies and the annuity contract were so commingled as to render the policies and the annuity one indivisible asset. In the present case plaintiffs and defendant agree that no part of the premiums for the life policies paid for any annuity contracts and that the annuity premiums paid for no part of the life policies; further, that the present decedent or any other person her age could have purchased the same annuity contracts from the same companies for the same premiums without any life insurance.

The Court's conclusion in the Burr case that the decedent's transactions were an investment rather than insurance accords with the Le Gierse decision. That conclusion, however, does not justify the determination, unsupported by Le Gierse, that an investment so made is then and thereafter indivisible and inseparable.

The Burr case and Conway v. Glenn, supra, which followed it, gave scant attention to the import of Goldstone v. United States.[6] There the decedent had purchased and paid for a life insurance policy and annuity contract. As issued the life policy designated his wife as "Owner" and the decedent as the "Insured," and was payable on his death to his wife or, if she predeceasd him, to their daughters. If all designated beneficiaries predeceased the decedent the policy proceeds were payable to his executors or administrators. The annuity contract, as issued, designated the wife as "Purchaser" and the decedent as "Annuitant." This contract provided for equal semi-annual payments to the decedent during his lifetime and for the payment of $6,071.46 to his wife upon his death or, if she predeceased him, to their daughters or, if they were dead, to his estate. Under both contracts the wife had the unrestricted power to assign, borrow, receive dividends, change beneficiaries and surrender. Both contracts provided that, if the wife predeceased the decedent, all of the enumerated powers were to vest in the decedent to the extent that such powers had not otherwise been exercised by the wife. The Court said:[7]

"Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996, makes it plain that these two contracts, which must be considered together, contain none of the true elements of insurance risk. Section 302(g) of the Act, * * * relating to amounts receivable 'as insurance under policies taken out by the decedent upon his own life,' is therefore inapplicable."

The Court then decided that the proceeds of the life policy and the balance of the annuity contract payable to the widow were includible in the decedent's gross estate under Section 302(c) as the subject of a transfer intended to take effect in possession or enjoyment at or after the decedent's death. The Court said:[8]

"The decedent, in making disposition of $25,000 of his property through these two contracts, retained a valuable interest in that amount which was not extinguished until he died. He retained not only the right to semi-annual payments under the annuity contract but also a contingent reversionary interest

6. 1945, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871.

7. 325 U.S. at page 690, 65 S.Ct. at page 1325.

8. 325 U.S. at pages 691–692, 65 S.Ct. at page 1325.

in the entire proceeds of both contracts. Had he survived his wife he could have exercised the attributes of ownership over the contracts, changing the beneficiaries or surrendering the contracts as he saw fit. If he had survived both his wife and his daughters the proceeds of the two contracts would automatically have been payable to his estate when he died. Thus the ultimate disposition of the proceeds of the contracts was suspended until the moment of decedent's death. Only then did the respective interests of the wife and daughters become fixed; only then were their interests freed from the contingency of the decedent's survival. His death was the decisive fact that terminated all of his potential rights and insured the complete ripening of the wife's interests. * * * The string that the decedent retained over the proceeds of the contracts until the moment of his death was no less real or significant because of the wife's unused power to sever it at any time.

*"The essential element in this case, therefore, is the decedent's possession of a reversionary interest at the time of his death,* delaying until then the determination of the ultimate possession or enjoyment of the property. The existence of such an interest constitutes an important incident of ownership sufficient by itself to support the imposition of the estate tax." (Emphasis supplied.)

While the specific question in the instant case was left undecided in Goldstone, it is clear that the decision did not give to Le Gierse the interpretation put upon the latter by the Burr case nor did it indicate indivisibility or inseparability. If, therefore, the present decedent had the right to separate the life insurance contracts from the annuity contract and to dispose of the former, she must be held to have done

so conformably with the Goldstone decision since neither she nor her estate retained any direct or reversionary interest, contingent or otherwise, in the three life policies—in short, she retained no string over the proceeds of these policies after July 6, 1938.

That the life insurance policy is separable from the annuity contract under such circumstances as here exist was decided in a well-reasoned opinion in Bohnen v. Harrison in which the Court said:[9]

"Though the Supreme Court has decided that such an arrangement is in the nature of a single investment program and, therefore, not within the definition of insurance mentioned in the former act, $40,-000 of which was then allowed to be deducted from the gross estate of a decedent, it does not follow that this investment program, made up of the two contracts, was indivisible. On the one hand, it is obvious that for the consideration of some $22,-000 a fixed annuity of $1600 was bought and that, on the other, in consideration of the sum of some $53,-000 advanced, the company agreed to pay, at the insured's death a fixed sum of $72,000. The annuities were not based upon and in no wise dependent upon any consideration given for the life policy. The money to be paid under the life contract was in no wise based or dependent upon the sum advanced to secure the annuities. The two contracts constituted independent units, two pieces of property. Consequently, when the insured immediately transferred and assigned all of her right, title and interest of every character in and to the policy of insurance; that unit of her estate passed to the assignees, and was no longer her property. It could, therefore, under no conception, constitute a part of her taxable estate when she died thereafter."

9. 7 Cir., 199 F.2d at page 493.

The determination should rest upon the realities of the situation and the essential nature of the donee's ownership. The realities of the situation are that this decedent made investments which were not true insurance because no risk element to the insurer was involved. However, the life policies and annuity contracts were, on their faces, separate contracts and, while they must be read together to determine the realities, no valid reason is advanced by the defendant to hold that such an obligatory joint perusal welds them together permanently and indissolubly for all purposes.

Judgment will be entered in favor of the plaintiffs upon submission within fifteen days of an appropriate form of judgment.

