**In re BOHNEN.**
**BOHNEN et al. v. HARRISON, Collector of Internal Revenue.**

**No. 49 C 362.**

United States District Court
N. D. Illinois, E. D.

Sept. 25, 1951.

McDermott, Will & Emery, Chicago, Ill., for plaintiffs.

Otto Kerner, Jr., U. S. Atty. for Northern Dist. of Ill., Chicago, Ill., Ellis N. Slack, Andrew D. Sharpe, and James P. Garland, Assts. to the Atty. Gen., for defendant.

CAMPBELL, District Judge.

Plaintiffs bring this action against the Collector of Internal Revenue for refund of an estate tax deficiency assessed against the estate of one Mary A. Bohnen, the mother of plaintiffs. The deficiency, including interest, amounts to $26,890.91.

The complaint alleges that Mary Bohnen died June 29, 1942. In October, 1935 the decedent, then 62 years of age, purchased a single premium life insurance policy in the face amount of $72,000. On the same day and in connection therewith, she purchased a life annuity contract, providing for an annual payment to her of $1618.03. The premium for the life policy was $53,-717.04; and for the annuity, $22,602.96. Plaintiff also asserts, and there is no reason to doubt, that the insurance company required that the annuity contract be purchased as a condition of issuing the life policy. The life policy named the three plaintiffs as equal beneficiaries.

Decedent then and there assigned to plaintiffs equally, as a gift, all of her right, title and interest in and to the said life policy, which assignment carried with it, inter alia, the right to receive the cash surrender value of said policy, if plaintiffs so elected, and the right to receive dividends payable thereon. In 1936, the decedent filed a gift tax return, reporting gifts to plaintiffs of ⅓ interest each in said life policy.

The deficiency was assessed, and the claim for refund denied, upon the theory that the life insurance policy was in the nature of an investment as distinguished from life insurance and was, therefore, taxable in decedent's estate under Section 811(c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), as a transfer by decedent, during her lifetime, under which decedent retained for her life the right to the income from the property transferred. On the ground that defendant's position is untenable as a matter of law, plaintiff now moves for judgment on the pleadings.

Section 811(c) of the Internal Revenue Code provides:

"Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*　\*　\*　\*　\*　\*

"(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or

enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

Disposition of the present motion depends upon the application and effect to be given to three previous authorities: (a) Helvering v. Le Gierse, 1941, 312 U.S. 531, 61 S.Ct. 646, 649, 85 L.Ed. 996; (b) Burr v. Commissioner of Internal Revenue, 2 Cir., 1946, 156 F.2d 871, 872; and (c) Goldstone v. United States, 1945, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871. The defendant relies almost entirely on the Le Gierse and Burr decisions as being dispositive of the issues presented in the instant case. I cannot agree.

In the Le Gierse case, the insured contracted for the same type of policies as did the decedent in the case at bar. However, there was no assignment of the policies, but the face value of the life policy was payable to the beneficiary upon the death of the insured. The question presented to the Supreme Court was whether or not the amounts received by the beneficiary were amounts "receivable as insurance" within the meaning of the insurance exemption subsection of the Revenue Code. The Court held that the policies must be considered together as a single unit and that, so considered, they did not create an insurance risk, since the combined effect was such that, in case of premature death, the gain to the insurance company under one would neutralize its loss under the other. The Court then cursorily determined that the proceeds were taxable under subsection (c), cited above, as a transfer to take effect in possession or enjoyment at or after death.

The Burr case was decided on the authority of the Le Gierse decision. In the Burr case, the insured purchased three life policies in connection with an annuity policy. He assigned the life policies to the named beneficiaries, including the right to assign the policies, surrender them and receive dividends thereon. The Court of Appeals for the Second Circuit stated: " * * * 'No matter who held the policy and the annuity, the two contracts, relating to the life of the one to whom they were

originally issued, still counteracted each other.' Helvering v. Le Gierse, supra, 312 U.S. 531, 541, 61 S.Ct. 646, 650, 85 L.Ed. 996. In assigning the policies, he was, in effect, transferring a remainder while retaining a life interest or—in the terms of the statute—retaining the enjoyment or the right to the income from the property. * * * "

The Court went on to say further that, while the power to surrender the policies was unexercised, the investment was analagous to a simple annuity with principal payable at death, a transfer which—even when irrevocable—is taxable under § 811(c).

The Burr case, in my opinion, applies the holding of Le Gierse too broadly and ignores the implications of the Goldstone decision. In Goldstone again there was a purchase of life and annuity policies. It is not quite clear whether there was an assignment or not, so I will quote directly from the Court's statement of facts: "By the terms of each contract the wife had the unrestricted right to assign it, to borrow money on it, to receive dividends, to change the beneficiaries and to surrender the contract and obtain the surrender value thereof. The contracts designated her as the 'Owner' or 'Purchaser,' the decedent being called the 'Insured' or 'Annuitant.' In the event that the wife should predecease the decedent, the contracts provided that all of the enumerated powers were to vest in the decedent to the extent that such powers had not otherwise been exercised by the wife."
[325 U.S. 687, 65 S.Ct. 1324.]

The contracts also provided that, if all the beneficiaries should predecease the decedent, the proceeds of the contract should be paid to his executors. The only mention made of the Le Gierse case is that the two contracts must be considered together and that they did not create an insurance risk. The Court then proceeded to discuss the question of whether the proceeds were includible in the gross estate, as being the subject of a transfer intended to take effect in possession or enjoyment at or after decedent's death, without further reference to Le Gierse and as a separate and dis-

tinct problem. It would seem, therefore, that the Le Gierse case is inapposite here. True, in the Goldstone case, the Court held that the proceeds of the life insurance policy should be included in the gross estate, but note the basis for the holding and the language employed:

"The decedent, in making disposition of $25,000 of his property through these two contracts, retained a valuable interest in that amount which was not extinguished until he died. He retained not only the right to semi-annual payments under the annuity contract but also a contingent reversionary interest in the entire proceeds of both contracts. Had he survived his wife he could have exercised the attributes of ownership over the contracts, changing the beneficiaries or surrendering the contracts as he saw fit. If he had survived both his wife and his daughters the proceeds of the two contracts would automatically have been payable to his estate when he died. Thus the ultimate disposition of the proceeds of the contracts was suspended until the moment of decedent's death. Only then did the respective interests of the wife and daughters become fixed; only then were their interests freed from the contingency of the decedent's survival. His death was the decisive fact that terminated all of his potential rights and insured the complete ripening of the wife's interests. The transfer of the proceeds of the contracts having been effectuated finally and definitely at the decedent's death, as in the Hallock case, [Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604] Section 302(c) requires that those proceeds be included within the decedent's gross estate.

"This conclusion is unaltered by the fact that the wife had the unrestricted power during the decedent's lifetime to exercise many important incidents of ownership over the contracts, including the power to terminate the decedent's reversionary interest in the proceeds. Whatever the likelihood of the exercise of this power, it is a fact that the wife did not change the beneficiaries or surrender the contracts so as to destroy decedent's reversionary interest. The string that the decedent retained over the proceeds of the contracts until the moment of his death was no less real or significant because of the wife's unused power to sever it at any time.

"The essential element in this case, therefore, is the decedent's possession of a reversionary interest at the time of his death, delaying until then the determination of the ultimate possession or enjoyment of the property. The existence of such an interest constitutes an important incident of ownership sufficient by itself to support the imposition of the estate tax. Helvering v. Hallock, supra. The indefeasibility of that interest prior to death or the decedent's possession of other powers of ownership is unnecessary and indecisive of estate tax liability."

Consider, therefore, the facts of the present case in the light of the Goldstone decision. The decedent here retained no interest, contingent or otherwise, in the proceeds of the policy, even in the event that all the beneficiaries predeceased her. Further, the policy, in regard to ownership thereof, contained the following provision:

"Owner. The rights conferred upon the Owner by the terms of this policy shall be vested in the Insured's children, Edwin J. Bohnen, Theodore G. Bohnen and Virginia E. Bohnen, jointly during their lifetime. Upon the death of any one of the Insured's said children, such rights shall be vested in the survivors of them, jointly during their lifetime, or if only one of them be surviving, such rights shall be vested in the survivor of them during his or her lifetime. Upon the death of the last survivor of the Insured's said children, such rights shall be vested in the executors or administrators of the last survivor of the Insured's said children.

"A person while thus vested with the rights of Owner, may, prior to the death of the Insured, exercise the rights conferred upon the Owner by the terms of this policy without the consent of the Insured or any special beneficiary."

From the foregoing, it should be clear that absolutely no reversionary interest of any type or description was retained or possessed by the decedent in the instant case. Since, therefore, that was the "es-

sential element" in the Goldstone case, its absence here is a valid distinguishing factor. Insofar as the plaintiffs were concerned, there was no deferment of possession or enjoyment until at or after decedent's death, and hence was not within the scope of Section 811(c).

For the foregoing reasons, plaintiffs' motion for judgment on the pleadings is granted, and judgment will, therefore, enter in favor of plaintiffs. Plaintiffs are directed to prepare and submit to the Court, within 15 days hereof, a judgment proper as to form.