*Decision will be entered under Rule 50.*

ESTATE OF LILLIE G. HUTCHINSON, DECEASED, FLORENCE E. HUTCHINSON, TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF LILLIE G. HUTCHINSON, DECEASED, THE FIRST NATIONAL BANK OF CHICAGO, TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF LILLIE G. HUTCHINSON, DECEASED, ALFRED H. HUTCHINSON, TRUSTEE AND TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 23856, 23857, 23858. Promulgated June 30, 1953.

*Ned P. Veatch, Esq.,* and *Hugh W. McCulloch, Esq.,* for the petitioners.

*Harold H. Hart, Esq.,* for the respondent.

754

OPINION.

BRUCE, *Judge:* The decedent, more than 10 years prior to her death and at the age of 75, assigned all interest in certain policies of insurance upon her life, and of a face value of $200,000, to her two sons.

At about the same time she made a transfer of additional property aggregating $200,000 in face value in trust for the benefit of her sons and their families. It is respondent's contention that these transfers were made in contemplation of death within the purview of section 811 (c), Internal Revenue Code.[1] He further contends that if not made in contemplation of death, the transfers of the insurance policies involved were ones intended to take effect in possession or enjoyment at death under which she retained the income during her life.

With respect to whether the transfer was in contemplation of death within the cited section it is well established that if the decedent at the time of the transfer had in mind that on her death a certain distribution of her property would be made and anticipated such distribution by making a present gift of the property, such gift would be made in contemplation of death. On the other hand, if the transfer related to purposes of life, such as the recognition of special needs or exigencies of her children, rather than to the distribution of property in anticipation of death, such gift would not be one made in contemplation of death. *United States* v. *Wells*, 283 U. S. 102. The purpose of section 811 (c) is to reach substitutes for testamentary disposition and thus prevent evasion of the estate tax.

While it seems logical that decedent, despite her good health, would consider testamentary disposition of her property at her advanced age of 75 years, it is well established that age alone is not controlling in determining the motive for the transfer. *Estate of Oliver Johnson*, 10 T. C. 680. Respondent contends that decedent had such a substitute disposition of her property in mind. He argues that this is shown by the fact that the transfers in question follow generally the pattern of a will prepared by decedent in 1929, prior to the death of her husband. This was not the will in existence at the time of decedent's death and we find only a superficial resemblance between such will and the pattern of the transfers. It is true that under that will, made by the decedent in 1929, her sons were made trustees and also beneficiaries under the trusts created. However, the primary object of the 1929

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

(A) in contemplation of his death ; or

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

(C) intended to take effect in possession or enjoyment at or after his death.

will and the trusts provided for by it was to assure the safety and comfort of decedent's husband who had previously divided his entire estate between decedent and his two sons.

The primary issue, whether the transfers by decedent in 1935 were made in contemplation of death, is decided by our finding upon this question of fact that such transfers were not of this character. We think our conclusion is fully justified by the record, which is voluminous and contains the testimony of many of decedent's relatives, friends, and associates, in addition to that of her personal physician. This record clearly establishes that decedent, at the time these transfers were made, was in exceptionally good health for a woman of her age. She was active both mentally and physically and her mind was occupied constantly with things about her in her daily life.

Of the large number of witnesses testifying, and who knew the decedent intimately, none had ever heard the decedent discuss the question of her death or the disposition of her estate. All of these witnesses agreed that decedent's life and thoughts appeared to be always with things of the present.

In addition to the evidence of record as to decedent's life and her activities before and following the transfers, there is shown to have been a definite reason for the transfers connected in no way with decedent's death. The transfers followed a conversation with one of sons who handled her business affairs for her, in which it was revealed that the business operated by the two sons and in which they were largely interested was in a serious financial condition and that for some time they had received nothing from it either by way of salary or dividends and had been forced to advance to it very substantial amounts from their private estates. On hearing of this condition decedent stated that it was a condition which she could relieve without burden to herself, and she took immediate steps to effect the transfers here in question. On suggesting that she transfer the insurance policies, her son advised her that such a gift for credit purposes of himself and his brother would be equivalent to a transfer of cash. We cannot see in this situation a dominating motive associated with decedent's death. Her motive appears to have been one concerned with the immediate present—the relief of her sons from existing financial difficulties.

The second issue presented, upon the inclusion at face value of certain policies of insurance on decedent's life assigned by her in 1935, presents another question and one upon which we are able to find no decision by this or any other court upon facts comparable to those here involved.

The policies involved were single premium policies upon decedent's life. They were issued in conjunction with annuities purchased by her. They were policies which would not have been issued except in

connection with the purchase of such annuities. Although the annuities alone could have been purchased by the decedent for identically the same amount paid for them in conjunction with the issuance of the life policies, the life insurance policies would not have been issued except in conjunction with the annuity contracts. These life policies were assigned by decedent to her two sons, she retaining no interest whatsoever. These policies were retained by the assignees as their property and 10 years later and prior to the death of the decedent were cashed in by their owners for their cash surrender value, which included dividends which had accrued thereon for the 10 years following the assignment. At the time of decedent's death the policies were no longer in existence. No income or benefit of any character was then owing either to the decedent or to the assignees of such insurance and none was paid by the insurers. All obligations under said policies had been fully satisfied by payment of the cash surrender values and accumulated dividends prior to decedent's death.

In *Helvering* v. *Le Gierse*, 312 U. S. 531, the Supreme Court held that a single premium life insurance policy purchased in connection with an annuity contract was an investment and not "insurance" within the meaning of section 302 (g) of the Revenue Act of 1926, as amended (sec. 811 (g) of the Internal Revenue Code prior to 1942), and that the sums payable thereunder to a specific beneficiary named therein were accordingly taxable to the estate of the decedent under section 302 (c) of said Act (sec. 811 (c) of the Internal Revenue Code). See also *Tyler* v. *Helvering*, 312 U. S. 657, and *Keller* v. *Commissioner*, 312 U. S. 543, decided the same day. In those cases the life insurance policies were still held by the insured decedents at the time of their respective deaths, and had not, as in the instant case, been assigned or canceled for their cash surrender value. Subsequent to the decision in the *Le Gierse* case, and in reliance upon it, we and a number of the circuit courts of appeals have held with respect to similar contracts that the benefits payable upon the death of the insured were includible in the decedent's gross estate for estate tax purposes under section 811 (c) of the Internal Revenue Code, notwithstanding there had been an irrevocable assignment of such insurance contract prior to the death of the insured. *Estate of Cora C. Reynolds*, 45 B. T. A. 44. *Burr* v. *Commissioner*, (C. A. 2) 156 F. 2d 871, certiorari denied 329 U. S. 785; *Conway* v. *Glenn*, (C. A. 6) 193 F. 2d 965. In a more recent decision, however, the Court of Appeals for the Seventh Circuit in *Edwin J. Bohnen, Executor, et al.* v. *Carter H. Harrison, Collector*, 199 F. 2d 492, decided October 20, 1952, affirmed a United States district court decision, *In re Bohnen*, 100 F. Supp. 118, and held that policies of insurance, similar to those here involved, which had been transferred by the decedent and which were held by the assignees at decedent's death, were not includible in the decedent's

estate under section 811 (c). The Supreme Court, on May 4, 1953, affirmed the decision of the Seventh Circuit per curiam by an equally divided court. Petition for rehearing was denied June 8, 1953.

While the affirmance by an equally divided court is, as between the parties, a conclusive determination and adjudication of the matter adjudged in that case, the principles of law involved not having been agreed upon by a majority of the Supreme Court prevents the case from being decisive of the instant case. *Hertz* v. *Woodman*, 218 U. S. 205, 213–214. Accordingly there remains a conflict between the decided cases as to whether an assigned single premium life insurance policy taken out in combination with an annuity contract, both of which were in effect at the time of decedent's death, is includible in the decedent's gross estate for Federal estate tax purposes. However, in view of the additional facts present in the instant case and not present in any of the above-mentioned cases involving insurance-annuity combinations, it is not necessary to rest our conclusion in this case on either of those cases.

The right to surrender the policies for their cash surrender value was present in each of the life insurance contracts involved in the *Le Gierse, Tyler, Keller, Reynolds, Burr, Conway,* and *Bohnen* cases and such right had been irrevocably assigned in each of the latter four cases. Such right had not, however, been exercised in any of such cases. In the instant case not only had the decedent made an irrevocable assignment of all her rights and interests in and to the life insurance policies involved, but, prior to the death of the decedent, the owners thereof had cashed the policies for their cash surrender values, including the dividends which had accumulated thereunder during the 10 years following the assignments.[2] There was accordingly no income or benefit of any character, arising out of said policies, payable either to decedent's estate or to her assignees at the time of her death.

The cancellation and surrender of the policies involved herein prior to the death of the decedent distinguishes this case from the facts of each of the cases involving insurance-annuity combinations mentioned above. Indeed, such a distinction appears to have been anticipated in certain of those cases. In *Helvering* v. *Le Gierse, supra,* the Supreme Court said:

> Considered together, the contracts wholly fail to spell out any element of insurance risk. It is true that *the "insurance" contract* looks like an insurance policy, contains all the usual provisions of one, and *could have been assigned or surrendered without the annuity.* Certainly the mere presence of the customary provisions does not create risk, and the fact that the policy could have been assigned is immaterial since no matter who held the policy and the annuity,

---

[2] In this connection it may also be noted that one of her sons, Irving, having predeceased his mother, the $50,000 Equitable policy previously assigned to him and which passed to the executors of his estate upon his death, was included in his gross estate and an estate tax paid thereon.

the two contracts, relating to the life of the one to whom they were originally issued, still counteracted each other. *It may well be true* that if enough people of decedent's age wanted such a policy it would be issued without the annuity, or *that if the instant policy had been surrendered a risk would have arisen.* In either event *the essential relation between the two parties would be different from what it is here.* \* \* \* [Emphasis supplied.]

And in *Burr* v. *Commissioner, supra,* the Court of Appeals for the Second Circuit said:

> *Had the sons actually cashed the insurance policies, the contracts would have been separated and the insurance company would then have had to make annuity payments out of income and capital from the annuity premium.* See Meisenholder, Taxation of Annuity Contracts under Estate and Inheritance Taxes, 39 Mich. L. Rev. 856, 884; 42 Col. L. Rev. 162, 165. But they chose not to surrender them; and the unexercised power to do so did not change the factual realities of the transaction. *While the power was unexercised,* the investment was analogous to a simple annuity with principal payable at death, a transfer which—even when irrevocable—is taxable under § 811(c). \* \* \* [Emphasis supplied.]

Here the power *was exercised* prior to the decedent's death and the benefits were received by the owners of those policies. The policies no longer existed at decedent's death and nothing then passed to the assignees to which an estate tax could attach. Cf. *Goldstone* v. *United States,* 326 U. S. 687.

We hold that under the facts here existing no amount may be included in the decedent's estate representing the value of the policies assigned by her and surrendered and cashed in by the assignees prior to her death.

The decision being for the petitioners on both the primary issues makes it unnecessary to pass upon the secondary issues (a), (b), and (c).

It has been stipulated that certain allowable expenses of administration not yet reflected in the computation of the estate tax will be determined and allowed on final recomputation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*