**Arthur H. SKALL, Executor of the Estate of Bertha H. Skall, Deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. C 69–660.**

United States District Court, N. D. Ohio, E. D.

Dec. 20, 1972.

Zolman Cavitch, Stotter, Familo, Cavitch, Elden & Durkin, Cleveland, Ohio, for plaintiff.

Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, for defendant.

WALINSKI, District Judge.

The decedent, Bertha H. Skall, was born on September 7, 1875, and died on April 28, 1966, at the age of 90 (Pltf's Ex. 1) (Tr. P. 26).

The decedent's husband, Aaron H. Skall, predeceased her in 1947. She had three brothers who predeceased her, the last of whom, Oscar Heidingsfeld, died on August 3, 1963, at the age of 90. In addition, decedent had two sons, Arthur H. Skall and Robert Skall. Her son Robert was an attorney and predeceased her in 1957. Robert had two children, Douglas Skall and James Skall (Tr. P. 8).

At the time of her brother's death, the decedent's own estate was valued at approximately $700,000 to $800,000. In addition to her own assets, she had a life tenancy in her deceased husband's estate, yielding approximately $10,000 in income annually. The assets comprising Mrs. Skall's estate were entirely cash and securities. Oscar Heidingsfeld's estate at the time of his death was in excess of $700,000 and also consisted almost entirely of marketable securities and cash (Tr. P. 10).

After the payment of certain specific bequests, the bulk of the estate of Oscar Heidingsfeld was left to his sister, Bertha H. Skall. The net amount inherited by decedent was approximately $500,000 (Pltf's Ex. 19).

Arthur Skall, executor of his mother's estate filed a timely Federal Estate Tax Return with the District Director of Internal Revenue reporting a taxable estate of $910,274.23 (Pltf's Ex. 4).

Shortly after Oscar Heidingsfeld's death, the decedent met with her son, Arthur H. Skall, and her attorney, Zolman Cavitch, to discuss what alternatives were available to make gifts of her substantial inheritance to her grandsons, Douglas and James, and to her son, Arthur. It was determined at that meeting that decedent would accept the sub-

stantial inheritance from her brother's estate, but would then immediately give away that inheritance to her son and grandsons (Tr. PP. 12, 51 and 52).

On April 9, 1965, decedent received the inheritance from her brother's estate. On that same date, she gave $101,303.39 to each of her grandsons in trust and an equalizing gift of $203,956.78 to her son in trust. The trust documents were executed on April 9, 1965. She subsequently filed a gift tax return and paid a gift tax of $91,566.29 (Tr. P. 18; Pltf's Request for Admissions 1. L., M., N., O., P., Q., and T.).

The Commissioner of Internal Revenue determined that the Skall Estate should have included an additional $406.-563.56, which represented the fair market value of certain securities placed in three trusts by Mrs. Skall on April 9, 1965, for the benefit of Arthur Skall, Douglas Skall and James Skall respectively. James Skall was at that time a minor, 17 years old (Ans. to Pltf's Request for Admissions 1. L.–R.; Pltf's Exs. 6, 7, 8; Ans. Deft's Interrogatory 10(a)).

The Internal Revenue Service determined that the aforementioned gifts were made in contemplation of death and were, therefore, includible in the decedent's gross estate. The deficiency with respect to the estate tax due was assessed against decedent's estate in the amount of $16,496.20. Arthur H. Skall, as executor, paid the deficiency plus interest in the amount of $1,192.69, for a total sum of $17,688.89, and then commenced the within action (Complaint).

Mrs. Bertha Skall had received most of these securities as residuary legatee of the estate of her brother Oscar Heidingsfeld, who had died in August, 1963. Her investment portfolio at that time was worth $723,000 (Tr. P. 30; Ans. to Pltf's Request to Admissions 1. E., H.; Pltf's Ex. 19).

Prior to October of 1965, decedent was of remarkable health and spirits. Her personal physician, Dr. Leonard Steuer, stated that at the approximate time of the making of the gifts, decedent was in excellent physical condition (Steuer Dep. P. 12). In October of 1965, five months after the gifts in question, decedent complained of heaviness in her chest. This was the first sign of her final illness. She subsequently became confined to her home and died on April 28, 1966 (Steuer Dep. P. 20; Tr.P. 29).

In 1963, decedent underwent a mastectomy. She discovered the problem herself, was operated upon and had an excellent recovery. Subsequent physical examinations revealed no recurrence of the cancerous condition and decedent was considered to have made a complete recovery. It was after the operation that decedent was diagnosed by her physician as being in excellent physical condition (Steuer Dep. PP. 26 & 43).

Among decedent's friends were Mrs. Mortimer Strauss and Mrs. Leo Baldauf. Both friends testified that decedent was in excellent health, active in social affairs and regularly attended the theater until October of 1965 (Strauss Dep. PP. 7 & 8; Baldauf Dep. PP. 4 & 5).

Prior to the onset of her final illness in October of 1965, decedent had no history of heart failure or a heart condition (Steuer Dep. P. 20).

Decedent maintained a pattern of gift giving from 1934 until her death. In 1934 she gave in trust $25,000 to each of her sons. In 1957 she gave in cash $23,000 to each of her sons. Before 1934 and up to 1957 she gave $3,000 each year to both sons. After the death of her son in 1957, she gave $3,000 to each of her two grandsons and additional gifts of $3,000 to her son Arthur and his wife. When her grandsons married, she gave $3,000 to their wives. The $3,000 gifts were generally given on September 7th, the decedent's birthday (Tr. PP. 18 & 20).

From September 7, 1961, through September 7, 1965, decedent made 36 gifts

of $500 or more. Her gifts for that period of time totaled $67,000 (Pltf's Request for Admissions 1. HH.).

Decedent's son, Robert Skall, died in 1957. Some six years prior to his death, he and his wife had been divorced. At his death two sons survived him, Douglas, 17 years of age, and James, 11 years of age. Although Robert Skall had been a practicing attorney, he left a very small estate. At the time of the gifts in question, Douglas was married and in college in California. James was still a minor residing in Cleveland with his mother. The only source of income for the two boys was approximately $100 to $200 per month from their father's estate (Tr. PP. 14, 15, 20 & 21).

Decedent expressed that the purpose of making the gifts was to maintain the standard of living to which the donees had been raised. She was particularly concerned about her grandsons who had very little current income (Tr. P. 20).

At the time she received the distribution from her brother's estate, she had three choices. She could accept and retain the bequest, she could renounce it, or she could accept it and then transfer it to her son and two grandchildren. At the time she received the distribution, she never seriously considered accepting and keeping the distribution (Tr. PP. 35 & 50).

Decedent considered two methods of giving away the inherited wealth. She considered renouncing the bequest in Oscar Heidingsfeld's Will. In that event one-half of his estate would go to the children of her deceased son Robert and one-half would go to her surviving son Arthur. Under that method, the transfers would have been free of any gift tax and would have been free of any claim of a transfer in contemplation of death.

The other method considered by the decedent was to accept the inheritance and give the wealth, one-half to Robert's children and one-half to Arthur in trust to protect the funds from dissipation either by the young sons of Robert or

their mother, Helen Skall. This method would involve the payment of approximately $90,000 in gift taxes, and in addition, a likely claim of the Internal Revenue Service that the gifts were made in contemplation of death if decedent died within three years of the gift (Tr. PP. 13, 16 & 50–52).

She decided that because she was too old to enjoy the proceeds of the distribution and because she did not want to pay estate taxes on the total of both estates, she would accept the distribution and then give what she received to her son, Arthur, and the grandsons of her deceased son, Robert.

Notwithstanding the unfavorable tax consequences, decedent chose to accept the inheritance and give it away in trust. Her stated purpose in doing so was to avoid a possible claim of the divorced mother of her grandsons and to avoid possible dissipation of the inheritance (Tr. P. 53).

The decedent was not aware that by accepting the legacy and then giving the proceeds to her heirs, the total burden of gift and estate taxes on both her estate and her brother, Oscar Heidingsfeld's estate, would be less by $30,557.53 than it would be if she renounced the legacy and let it pass to the same heirs under the terms of her brother's will (Tr. P. 56; ¶ ¶ 1, 2, Pltf's Amended Ans. to Request for Admission).

The gifts made by decedent in April of 1965 consisted of marketable securities received from the estate of Oscar Heidingsfeld, her recently deceased brother (Pltf's Request for Admission 1. L., M., P., & Q.).

Decedent discussed her intentions of making a gift program of the entire amount she was to receive from her brother's estate with Stein, Roe & Farnham, her investment counselors, on or prior to November 7, 1963 (Pltf's Request for Admissions 1. I.).

Decedent expressed to her son, Arthur H. Skall, and others surprise at the size of the inheritance from her brother's estate. She stated that she neither needed

the money or could use the money. She felt it was in the nature of a windfall (Tr. P. 12).

Although 89 years of age at the time of the gifts in question, decedent was a remarkably energetic and vigorous person. She was described as being petite, trim, well-dressed and conscious of her weight (Tr. PP. 22 & 58).

Decedent was an active member of the Oakwood Country Club. In addition, she was an enthusiastic supporter of the Cleveland Orchestra, having actually purchased her 1965–1966 season tickets, which due to her last illness she was unable to use. She also had been a regular subscriber for season tickets at the Hanna Theater, again being unable to attend during the fall of 1965 and spring of 1966 seasons, due to her final illness (Pltf's Request for Admissions 1. FF., & Ex.A, attached to said Request for Admissions).

Her enthusiasm for the theater was such that when confined to her apartment during her last illness, decedent expressed to her physician her desire to use her tickets to the Hanna Theater despite her illness (Steuer Dep. P. 33).

At the time of the gifts in question, decedent was out of her apartment on a daily basis, shopping for groceries and clothes. She was invited to luncheons and gave luncheons. She was a member of a bridge group and a literary group. She lived in and maintained a seven-room apartment and was involved in social and domestic activities every day of the week. Just prior to the gifts in question, decedent purchased for her own use a new mink coat. She continued to be active until her final illness occurred in late 1965 (Tr. PP. 22–26).

The decedent had executed six Wills over the years. Her first Will was executed in 1944 and her Last Will was executed on November 9, 1961, and modified by a Codicil executed in 1965. (Pltf's Exs. 2 & 3; Ans. to Deft's Interrogatory 19).

Decedent did not execute a new Will at the time of the gifts. Her Will, which was the subject of probate proceedings, was executed on November 9, 1961. Although she executed a Codicil in October of 1965, there were no material changes to her Last Will and Testament (Tr. P. 40; Pltf's Exs. 2 & 3).

For about the last seven years before her death, Mrs. Skall had received estate planning advice from an expertly qualified lawyer who drew up her Last Will and the three trusts into which she transferred the distribution she received from her brother's estate (Tr. PP. 46–48, 59 & 60–62).

The transfer by Mrs. Bertha Skall of securities valued at $406,563.56 into the three trusts described above on April 9, 1965, was not done with intent to avoid estate taxes and was *not* done in contemplation of death. The intent to make the gifts was firm at the time of Oscar's death.

## CONCLUSIONS

The Court has jurisdiction of this case under the authority of 28 U.S.C. § 1346(a)(1).

A transfer of property is in contemplation of death if made with intent to avoid estate taxes or serve as a substitute for a testamentary disposition. Cleveland Trust Co. v. United States, 421 F.2d 475 (C.A.6, 1970); Treasury Regulations on Estate Tax, § 20.2035–1 (26 C.F.R.).

The law places upon the plaintiff the burden of proving that the gift in question was not made in contemplation of death and if the transfer was made within three years of date of death, it is presumed to have been made in contemplation of death. Cleveland Trust Co. v. United States, *supra*; Internal Revenue Code of 1954, § 2035(b), (26 U.S.C.).

The good health and good spirits of a donor are an indication of a life associated motive, and offset advanced age as an important factor in determining the impelling motive of a donor in making the gift. Estate of Hutchinson, 20 T.C. 749 (1953); Estate of Johnson, 10

T.C. 680 (1948); Estate of Stowe, 31 Tax Ct.Mem.—(1972), 1972 CCH Tax Ct.Mem.Dec., # 31,378(M).

Bertha Skall's heirs at law were her son, Arthur Skall and Douglas and James Skall, the two sons of her deceased son, Robert Skall.

■ A long-term policy or pattern of making gifts to children and family members indicates a life associated motive on the part of the donor. Landorf v. United States, 408 F.2d 461, 187 Ct. Cl. 99 (1969); Estate of Johnson, *supra*.

■ Gifts made with the motive of helping the donees meet their financial needs is a motive associated with life. Kniskern v. United States, 232 F.Supp. 7 (D.C.1964); Estate of Hutchinson, *supra*.

■ A gift made for the motive of seeing the recipient enjoy the benefits of the gift during the decedent's lifetime is a life associated motive. Dierks v. United States, 86 F.Supp. 832 (D.Kan. 1949).

A decedent's intent to give equalizing gifts to other members of a family to be fair to all the decedent's children has been considered to be a motive associated with life. Estate of Stowe, *supra*; Estate of Moir, 47 B.T.A. 765 (1942).

A gift prompted by a donor's receipt of property or wealth in excess of his needs, has been held to be a life associated motive. Kniskern v. United States, *supra*; Hunt v. United States, (C.D.Cal.1971), 71–1 U.S. Tax Cas., ¶ 12,784. This has been especially held to be true where the decedent chose to make the gifts at a time and in a fashion that would not result in any reduction of decedent's current income, and the gifts did not involve any portion of decedent's original estate. Hunt v. United States, *supra*; Estate of Stowe, *supra*.

If Bertha Skall were to have renounced the legacy from her brother, Oscar Heidingsfeld, her share would have been divided between her son, Arthur and her two grandchildren, Douglas and James (Pltf's Ex. 19).

■ Transfers by a decedent to the natural objects of his bounty, though testamentary in nature in that the decedent did not give the gift to a stranger, does not mean that the impelling motivation for the gift was the thought that death was near. Estate of Stowe, *supra*. This is especially true if the decedent does not revise his Will at or about the time the gift is made. *See* Estate of Stowe, *supra*.

■ The awareness of death taxes and knowledge that the making of a gift will reduce one's death taxes does not mean the gift was made with death motives. Estate of Stowe, *supra*. A taxpayer does not have to arrange his affairs to assure the greatest amount of taxes are received by the government. American Fletcher National Bank & Trust Co. v. United States, 441 F.2d 470 (7th Cir. 1971).

■ A gift of a substantial amount of property inherited by the decedent, an elderly, wealthy person, made under circumstances in which (1) the decedent received the property as a windfall, (2) the decedent's health and spirits were good at the time of the gift, (3) there was financial need on the part of the recipients of the gifts, and (4) the decedent had an established policy of making gifts, was not made in contemplation of death. Estate of Stowe, *supra*.

The plaintiff has overcome the presumption that the gift was made with the intent to avoid estate taxes and was not a substitute for a testamentary disposition.

It is therefore ordered that the refund requested by plaintiff be allowed.